*In re* MARRIAGE OF JO ELLA M. OFFER, Petitioner-Appellant, and KEN-NETH WAYNE OFFER, Respondent-Appellee.

Fourth District    No. 4—95—0285

Opinion filed October 31, 1995.

GREEN, J., specially concurring.

Jessica Stricklin, of Decatur, for appellant.

Vernon H. Houchen, of Decatur, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 1990, petitioner, Jo Ella M. Offer, filed a petition for dissolution of her marriage with respondent, Kenneth W. Offer. In February 1991, the trial court entered an amended judgment of dissolution of marriage, which provided in part for Kenneth to pay $600 per month as rehabilitative maintenance to Jo Ella, starting January 1991 and ending after December 1994.

In December 1994, Jo Ella filed a petition to extend maintenance due to alleged changes of circumstances. She also asked the trial court to order Kenneth to pay her attorney fees for that proceeding. The court conducted a hearing on that petition and denied it. Jo Ella appeals, and we reverse.

## I. BACKGROUND

The trial court entered its initial judgment of dissolution in this case in December 1990, ordering Kenneth to pay $400 per month in temporary maintenance and an additional $300 per month as permanent maintenance (until Jo Ella attained the age of 65, Kenneth retired, or further order of the court). Kenneth filed a post-trial motion, which the court granted in part by its docket order of February 1991, changing the maintenance order to $600 in rehabilitative maintenance, payable monthly in two $300 installments for four years. The *only* explanation the court provided for this change was the following:

"One reason for this modification is the fact that [Jo Ella] testified that she smokes two (2) to three (3) packages of cigarettes a day and it is this Court's decision that [Kenneth] should not be subjected to a contingent liability for maintenance during a period of time when [Jo Ella] is destroying her health and possibly her ability to work."

No appeal was taken.

In November 1994, Kenneth filed a petition to terminate the order for withholding, asserting that because his maintenance payments would soon cease, the trial court should terminate the withholding order through which Kenneth made those payments. Jo Ella responded with a petition to extend maintenance.

Kenneth subsequently filed a motion for summary judgment on his petition to terminate, arguing that maintenance could not be extended because the February 1991 judgment order stated the following:

"Excepting for those payments set forth in paragraph 3 of this Judgment [(the paragraph setting forth the terms and amount of the rehabilitative maintenance order)], each of the parties is forever barred from claiming maintenance from the other."

The trial court denied Kenneth's motion for summary judgment, ruling that Jo Ella was not barred from seeking to modify the rehabilitative maintenance order.

The court then conducted a hearing on the merits of both Kenneth's petition to terminate the order for withholding and Jo Ella's petition to extend maintenance. Our review of the evidence presented at that hearing supports Jo Ella's claim that since the end of her 28-year marriage to Kenneth, she has lived at a subsistence level compared to the standard of living she enjoyed during the marriage. Meanwhile, Kenneth's income has increased. His average net income for 1991 through 1994 was $32,800. The $600 per month he was paying in rehabilitative maintenance to Jo Ella, totaling $7,200 per year, left Kenneth an income of $25,600, or $2,100 per month on average. That sum amounts to $700 more per month than Kenneth's financial affidavit showed he needed to meet his basic monthly expenses. Since the divorce, Kenneth had also taken vacations to Hawaii and Oklahoma.

The record further shows that Jo Ella has no assets and no discretionary income. She testified that she had been in poor health for some time and was unable to obtain health insurance. She claimed to be without sufficient funds to pay for prescribed medicine for her problems with her blood pressure, depression, and her throat. Since the divorce, Jo Ella has had two major surgeries, one removing part of her cervix because of cancer, and the other removing throat polyps.

Jo Ella was cross-examined about the extent of her smoking, and she denied that she smoked four cartons of cigarettes a week in 1990, claiming she smoked at most two cartons a week. However, she did admit that she still smoked and that she was overweight. She claimed to have cut back on smoking because of her throat condition.

At the conclusion of the hearing, Kenneth's counsel argued to the court against extending Jo Ella's rehabilitative maintenance, stating in part the following:

"Her affidavit back then shows $268 a month for medication. And this type of medication that she's taking tells you right quick that she's got health problems related to smoking and overweight. The Court, specifically, found that was the case. The docket sheet will show it [(apparently, the February 1991 docket entry)], and I think the judgment shows it, that the Court said, 'I'm not going to punish this man because his wife won't do what's right and because she has a health hazard through smoking and overweight.' Well, now, they're back in Court saying, 'We don't care what was said or done or anything else. We want $500 a month from you.' *** She has cut down her smoking from three or four cartons a week

[to] one carton, but one carton—one pack is too much for her, and that's why she's got all these blood pressure problems and why she's got all the breathing problems, that's why she has a problem with her in her throat with her polyps. They're all directly related to smoking."

The trial court took the matter under advisement. In February 1995, the court issued its memorandum of decision, consisting of six paragraphs plus a concluding paragraph and reading in its entirety as follows:

"First[ ], the Court reviewed its notes to refresh its recollection of facts previously adduced with respect to the life[-]style, health care services being rendered, condition of health, and industry of both parties hereto.

Second[ ], the Court takes judicial notice of 'inflation' at the rate of about 3 percent per year which rate, disregarding the compounding thereof, is about 15 percent, which more or less equals the Respondent's increase in earnings between 1990 and 1994. [Jo Ella's] increase in income, disregarding rehabilitative maintenance, was from zero income to about $10,000 per year gross.

*Third[ ], the Court takes judicial notice that smoking is detrimental to one's health and that this fact is 'common knowledge' at this time. Further, [Jo Ella] testified that she was smoking about 3 cartons a week and has reduced her smoking habit to 1 or 2 cartons per week. [Jo Ella], also, testified that polyps developed in her throat since the original divorce.*

*Fourth[ ], the Court takes judicial notice that being overweight is detrimental to one's blood pressure, and [Jo Ella] testified that she is overweight.*

Fifth[ ], an examination of [Jo Ella's] [a]ffidavits herein show[s] that her expenses have been reduced about 50 percent, most of which reduction is attributable to [her] reduced household and household expenses.

Sixth[ ], although [Jo Ella] testified that she is a Licensed Pharmacy Technician and could not obtain employment as such, she did not offer any evidence as to when and where she applied or the frequency of such applications.

Consequently, it is the decision of this Court that [Jo Ella] failed to provide a basis for extending the [r]ehabilitative [m]aintenance [o]rder previously entered herein, and as indicated above, rehabilitative maintenance terminated December 15, 1994." (Emphasis added.)

In March 1995, the court entered orders granting Kenneth's motion to terminate the order for withholding and denying Jo Ella's petition to extend maintenance. In those orders, the court repeated the find-

ings it made in its memorandum of decision. Implicit in the court's denial of Jo Ella's petition was the denial of her request for attorney fees.

## II. ANALYSIS

■ Jo Ella argues on appeal that the trial court erroneously denied her petition to extend maintenance. The decision to modify maintenance lies within the sound discretion of the trial court, and this court will not disturb that decision absent an abuse of discretion. (*In re Marriage of Dunseth* (1994), 260 Ill. App. 3d 816, 827, 633 N.E.2d 82, 91.) Kenneth responds to Jo Ella's argument by simply asserting that the trial court did not abuse its discretion and that its decision "was the result of a thoughtful and careful analysis of the evidence." We disagree with Kenneth and deem the trial court's analysis so seriously flawed that its ultimate judgment denying Jo Ella's petition to extend maintenance cannot be permitted to stand.

Section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510 (West 1994)) sets forth the criteria for a trial court to consider when deciding a petition for modification of maintenance. Section 510(a) of the Act provides that a motion for modification of maintenance should be granted "only upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a) (West 1994).

■ In *Rice v. Rice* (1988), 173 Ill. App. 3d 1098, 1100, 528 N.E.2d 14, 15-16, the court held that the same factors the trial court should consider in making an initial award of maintenance also should be considered in determining whether (and to what degree) to modify a maintenance award. Those factors are set forth in section 504(a) of the Act as follows:

"(a) In a proceeding for dissolution of marriage ***, the court may grant a temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just, without regard to marital misconduct, in gross or for fixed or indefinite periods of time, and the maintenance may be paid from the income or property of the other spouse after consideration of all relevant factors, including:

(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or

delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 1994).

*Nothing* in section 504 or 510 of the Act authorizes or permits the consideration of the factors the trial court emphasized in this case, namely, that Jo Ella is overweight and continues to smoke. To be blunt, the existence of these "factors" is none of the trial court's business.

■ Although section 504(a)(8) of the Act authorizes the trial court when resolving maintenance issues to consider "the age and the physical and emotional condition of both parties" (750 ILCS 5/504(a)(8) (West 1994)), that section is designed to call the court's attention to the *needs* of a party based upon any of these factors; it does not authorize the trial court to "punish" a party because that party's behavior regarding her physical and emotional condition meets with the court's disapproval.

■ Further, although section 504(a)(12) of the Act authorizes the trial court to consider "any other factor that the court expressly finds to be just and equitable" (750 ILCS 5/504(a)(12) (West 1994)), we specifically reject any notion that that section could serve as a basis for the trial court's analysis in this case. We hold that the factors the trial court considered here—that Jo Ella is overweight and continues to smoke—cannot, as a matter of law, be deemed "just and equitable" under section 504(a)(12) of the Act (750 ILCS 5/504(a)(12) (West 1994)).

We emphasize that this case is not one in which Jo Ella claims to be entitled to maintenance because she had dissipated otherwise available assets, for example, on a $100-a-day cocaine addiction. Nor

does she claim that her need for maintenance is greater because of any such dissipation than it otherwise would be. In the absence of either claim, how Jo Ella chooses to live her life should be irrelevant to the trial court's determination of whether Jo Ella should be awarded maintenance, and if so, how much.

The trial court's analysis in this case constitutes unwarranted interference and involvement in Jo Ella's life. Proceedings involving dissolutions of marriage frequently require men and women to disclose publicly more about themselves than they would like, and to subject themselves to more control by the government—in this case, the courts—than would normally be tolerable regarding their property, the care and custody of their children, where and with whom they may reside, and what they may do with their future earnings. However, the legitimacy of governmental involvement in lives of its citizens is not absolute, and trial courts must exercise self-restraint when dealing with the citizens before them. In this case, that restraint was lacking.

The trial court provided no explanation or justification for its consideration of Jo Ella's weight and smoking in deciding her petition to extend maintenance. On appeal, Kenneth similarly fails to provide any such explanation. Because we deem the trial court's consideration of these "factors" as erroneous, we need not address Jo Ella's appeal on the merits. Instead, we reverse the denial of Jo Ella's petition to extend maintenance and remand for a new hearing before a different judge. Further, we direct on remand that Jo Ella's petition for attorney fees be considered anew by the trial court.

## III. CONCLUSION

For the reasons stated, we reverse the denial of Jo Ella's petition for extension of maintenance and remand with directions.

Reversed and remanded with directions.

KNECHT, P.J., concurs.

JUSTICE GREEN, specially concurring:

I concur in the decision to reverse and remand. However, one of the substantial grounds upon which Jo Ella sought extension of her maintenance was the medical expense which arose from her health problems. Under those circumstances, I conclude that consideration of Jo Ella's health habits was "just and equitable" but the court breached its discretion in giving too much significance to a habit which was hard to break and not shown to be the sole cause of the health problems.