NO. 4-02-0713

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of

LINDA S. WALLER, n/k/a LINDA S. SACHS,

       Petitioner,

       and

DENNIS B. WALLER,

       Respondent-Appellant,

       and

THE ILLINOIS DEPARTMENT OF PUBLIC AID ex rel. LINDA S. WALLER, n/k/a LINDA S. SACHS,

       Intervening Petitioner-Appellee.

)

)

)

)

)

)))

)

)

)

Appeal from

Circuit Court of

Champaign County

No. 88C149  

Honorable

Michael Q. Jones,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

The trial court dissolved the marriage of petitioner, Linda S. Waller (n/k/a Sachs), and respondent, Dennis B. Waller, and awarded custody of their son, Joshua Waller, to petitioner.  A modified order of support required respondent to pay child support until Joshua's eighteenth birthday, September 10, 2001.  Joshua was not expected to graduate from high school, however, until May 31, 2002.  On behalf of petitioner, the Illinois Department of Public Aid (Department) filed a motion to require respondent to continue paying child support until Joshua's expected date of graduation.  Over respondent's objection, the trial court granted the motion.  Respondent appeals, arguing that the trial court should have held an evidentiary hearing to consider the parties' current financial circumstances.  We agree.

We hold that before extending the termination date of a support order to provide support for an 18-year-old until his or her graduation from high school, the trial court must comply with sections 510(a) and 513 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/510(a), 513 (West 2000)).  By refusing to apply those statutory sections to the facts of the case, the trial court abused its discretion.  Therefore, we reverse the judgment.  Because it is clear, from the undisputed evidence, that respondent lacked the ability to pay child support after Joshua turned 18, an order requiring him to do so could never stand; we remand, however, for entry of an order fixing the amount of the arrearage.

I. BACKGROUND

The modified order of support, entered on March 19, 1997, required respondent to pay $320 per month in child support "until September 10, 2001," as well as become current on the then-existing arrearage.  On August 6, 2001, the Department filed its motion to extend child support.  The Department alleged that although Joshua would attain the age of majority on September 10, 2001, his senior year in high school would not end until May 31, 2002.  Attached to the motion was a letter, from the high-school principal, confirming Joshua's expected date of graduation.  The Department prayed "[t]hat the [s]upport order continue through May[] 2002" and the trial court "enter a judgment" against respondent "for arrears."

On October 16, 2001, respondent filed a response to the motion to extend child support, admitting the allegations in the motion but adding that "he [was] unemployed at this time and unable to make extended payments."  He prayed that the trial court deny the motion for that reason.  On the same day, he filed a financial affidavit averring that he was 45 years old, unemployed, and without any source of income.  Other than a car, which he valued at $500, he had no assets.  His monthly living expenses totaled $1,074.

At respondent's request, or with his agreement, the trial court continued the hearing on the motion several times, until June 4, 2002.  In the hearing and in a memorandum he filed before the hearing, respondent made a twofold argument:  (1) under section 510(d) of the Dissolution Act (750 ILCS 5/510(d) (West 2000)), child support ended when the child turned 18; and (2) a trial court could award postmajority support only under section 513 of the Dissolution Act (750 ILCS 5/513 (West 2000)), which required a new proceeding in which the trial court considered the parties' current financial circumstances.  

After hearing the arguments, the trial court disagreed with respondent.  It explained, in a dialogue with his attorney:  

"I respectfully disagree with the proposition that you can't order [s]ection 505 child support after a child turns 18.  I think I have the authority to modify the order, and I think that when the legislature says[,] [in section 505(g),] the termination date shall not be earlier than age 18[,] *** they could have said the termination date shall be no later than 18.  They didn't say that.  ***

The problem that I've got here is, being fair to [respondent], I just don't understand why this wasn't heard sooner.  If[,] back in September or October of 2001[,] I would have said the [m]otion is allowed, then [respondent] knows *** he can file a motion to modify.  [He could have said:]  [']Hey, Judge,  *** I don't like your ruling, but I hear you ordered me to pay child support.  Now let me tell you about this change of circumstances since that order was entered.  I've lost my job['--]or whatever.  That's the problem that I [have] got.  

* * *

I think I can continue[,] under [s]ection 505[,] a child[-]support [obligation] past the [eighteenth] birthday without requiring a [hearing on a possible] change of circumstances *** or without implicating [s]ection 513.

* * *

*** [I]t is not a [section] 510 modification to extend the termination date [rather than change the monthly amount of child support] ***.  ***

* * *

[Section 505(g) says:] [']Nothing in this subsection shall be construed to prevent the court from modifying the order.[']  ***

* * *

[Section] 513 doesn't apply because we haven't terminated [respondent's] child[-] support obligation under [s]ection 505.

* * *

I'm ruling that since [petitioner] filed a motion before the [eighteenth] birthday of this child and asked me to modify the termination date[,] *** under [s]ection 505 I have the authority to do that, and I'm doing it."

Notwithstanding its ruling, the trial court allowed respondent to make an offer of proof as to his current financial situation.  Respondent testified, essentially, to the facts in his financial affidavit:  his lack of income and assets.  He testified that after "a long time and a lot of resumes," he finally landed a job on March 11, 2002, only to be fired seven weeks later for failing to comply with his employer's unethical demands.  Respondent insisted he lacked the means to pay child support.

In an amended judgment order entered on August 1, 2002, the trial court granted petitioner's motion to extend child support until May 31, 2002.  The Court held that "it [had] the authority through [s]ection 505 to do so and that no modification under [s]ection 510 [was] implicated[,] nor [was] [s]ection 513 implicated."  The court found that under the modified order of support, respondent owed $8,611.14 plus statutory interest, whereas under the modified order of support as extended, he owed $11,171.14 plus statutory interest.  The court entered a judgment against respondent for the latter figure.

In a motion to reconsider, respondent argued that "[w]hile [s]ection 505(g) does provide the [c]ourt with authority to modify a support order, this clause is not independent of [s]ection 510."  The trial court denied the motion for reconsideration.

This appeal followed.

II. ANALYSIS

This appeal turns on the meaning of sections 505, 510, and 513 of the Dissolution Act.  We interpret statutes 
de
 
novo
.  See 
Hogan v. Adams
, 333 Ill. App. 3d 141, 146, 775 N.E.2d 217, 221 (2002).  When a party appeals an order modifying an award of child support, we ask whether the trial court abused its discretion.  
In re Marriage of Mulry
, 314 Ill. App. 3d 756, 760, 732 N.E.2d 667, 671 (2000).  The trial court abused its discretion only if its decision was "clearly against logic."  
State Farm Fire & Casualty Co. v. Leverton
, 314 Ill. App. 3d 1080, 1083, 732 N.E.2d 1094, 1096 (2000).  The question here is whether the trial court had the statutory authority to extend respondent's child-support obligation in the fashion it did
.  

The Department argues that a trial court has the power, in certain circumstances, to order the payment of support beyond the child's eighteenth birthday.  We agree with that truism.  Attaining the age of majority, 18 years, is an emancipating event.  
In re Marriage of Ferraro
, 211 Ill. App. 3d 797, 799-800, 570 N.E.2d 636, 638 (1991).  Normally, child support ceases at emancipation, but the parties can agree otherwise or the judgment can provide otherwise.  750 ILCS 5/510(d) (West 2000).  Section 513(a) describes the instances when a trial court "may award sums of money *** for the support of *** children of the parties who have attained majority."  750 ILCS 5/513(a) (West 2000).  One of those instances is when "the child of the parties is still attending high school, even though he or she attained the age of 18."  750 ILCS 5/513(a)(2) (West 2000).  

We disagree with the Department that "[i]t is child support under section 505, and not educational expenses pursuant to section 513, that is at issue in cases where a child needs support while finishing high school."  Section 513(a)(2) describes "educational expenses" as a type of "support [for] *** children *** who have attained majority," including those in high school.  750 ILCS 5/513(a)(2) (West 2000).  "Support" is simply a general term that can include "educational expenses" for a child who has turned 18 but is still in high school.  "Educational expenses" may include "room" and "board," just as the more generic term, "support," may include shelter and food.  A court can award "support" to disabled unemancipated children, minor or nonminor (750 ILCS 5/513(a)(1) (West 2000)), and a particular kind of support, "educational expenses," to "nonminor children" in school (750 ILCS 5/513(a)(2) (West 2000)).  In short, if the child has attained majority, the trial court must turn to section 513 when deciding whether to award support for that "nonminor child."  

The modified order of support stated that respondent's obligation to pay support would cease when Joshua ceased being a minor.  To require respondent to continue paying support after Joshua turned 18, the trial court had to change, or "modify," the modified order of support.  Therefore, section 510, entitled "Modification *** of provisions for *** support," had obvious relevance.  750 ILCS 5/510 (West 2000).  Section 510(a) provides that "[a]n order for child support may be modified" in two circumstances, only one of which (the parties agree) has any possible applicability to this case:  "upon a showing of a substantial change in circumstances."  750 ILCS 5/510(a)(1) (West 2000).  

The Department contends that modifying the date the parent may cease paying child support is not truly a modification within the meaning of section 510.  It cites two cases holding that a parent's obligation to pay child support ends, by operation of law, when the child abandons the parental home (
Meyer v. Meyer
, 222 Ill. App. 3d 357, 361-62, 583 N.E.2d 716, 719-20 (1991)) or gets married (
In re Marriage of Daniels
, 296 Ill. App. 3d 446, 449, 695 N.E.2d 1376, 1378-79 (1998)).  The Department reasons, by analogy, that the period during which a parent must pay support 
extends
, by operation of law (without a showing of a substantial change of circumstances), to the date the 18-year-old beneficiary of the support is scheduled to graduate from high school.  

We disagree with the Department's reasoning.  
Meyer
 and 
Daniels
 relied on section 510(d) of the Dissolution Act (750 ILCS 5/510(d) (West 1998)), which provided:  "Unless otherwise agreed in writing or expressly provided in a judgment, provisions for the support of a child 
are terminated
 by emancipation of the child ***."  (Emphasis added.) 
 
Meyer
, 222 Ill. App. 3d at 362, 583 N.E.2d at 719-20; 
Daniels
, 296 Ill. App. 3d at 450, 695 N.E.2d at 1379.  No statute says:  "Absent an order or agreement, provisions for the support of a child are extended to the date he or she graduates from high school, regardless of emancipation."

In 
In re Marriage of Offer
, 275 Ill. App. 3d 986, 990, 657 N.E.2d 694, 697 (1995), we held that section 510(a) applied to a petition to extend maintenance.  We see no principled reason to distinguish between an extension of child support and an extension of maintenance; both are a "modification" of an order of child support or maintenance within the meaning of section 510.  In 
In re Marriage of Stanley
, 133 Ill. App. 3d 963, 973, 479 N.E.2d 1152, 1159 (1985), we held that the "duration" of maintenance and child support was "modifiable upon a showing of substantially changed circumstances"--the showing section 510(a) required.  We have declined to read into section 510(a) an exception for certain types of modifications.  
In re Marriage of Turrell
, 335 Ill. App. 3d 297, 310, 781 N.E.2d 430, 442 (2002) (section 510(a) "does not distinguish between 'procedural' and 'substantive' changes").

To require continued support until graduation day, the trial court had to change the modified order of support by effectively drawing a line through the words "until September 10, 2001," and substituting the words "until May 31, 2002."  A modification is a modification.  Section 510(a) imposes conditions for modifying an order of support and, on its face, makes no exception for extending the period during which the parent must pay support.  We will not interpret an unambiguous statute as having subtle exceptions or limitations that are absent from the text.  
Lauer v. American Family Life Insurance Co.
, 199 Ill. 2d 384, 390-91, 769 N.E.2d 924, 928 (2002).  If the legislature intended to make an exception for modifying the duration of support, it surely would have considered the exception important enough to say so in section 510.  Increasing the period during which the parent must pay monthly support means more money out of the parent's pocket, just as surely as increasing the monthly amount.

In section 505(g), the trial court purported to find authority, separate and distinct from section 510, to change the modified order of support.  Specifically, the trial court relied on the language in section 505(g) that "[t]he termination date shall be 
no earlier
 than the date on which the child covered by the order will attain the age of majority or is otherwise emancipated" and "[n]othing in this subsection shall be construed to prevent the court from modifying the order."  (Emphasis added.)  750 ILCS 5/505(g) (West 2000).  Just because a court can order postmajority support, it does not follow that it has unfettered discretion to do so.  Further, just because nothing in section 505(g) prevents a court from modifying a support order, it does not follow that nothing in section 510(a)--or, for that matter, any other section of the Dissolution Act, such as section 513--prevents the modification.

The Department argues that even if section 510 was applicable, the evidence showed a substantial change of circumstances in that Joshua would not graduate from high school until May 2002.  We do not understand how Joshua's expected date of graduation was a 
change
 in circumstances.  The Department offers no explanation and does not cite any pages of the record that shed light on that question.  A "change in circumstances," within the meaning of section 510(a)(1), is a change that occurred sometime after the entry of the modified order of support.  See 
In re Marriage of Hughes
, 322 Ill. App. 3d 815, 819, 751 N.E.2d 23, 26 (2001).  According to the petition for a judgment of dissolution, Joshua was born on September 10, 1983.  Presumably, he would not have started kindergarten until 1989.  By our count, he was right on schedule when he began his senior year of high school in 2001, the year he turned 18.  The parties must have known, from the date of Joshua's birth, that he would reach the age of majority before graduating from high school.  

"When determining whether there is sufficient cause to modify, courts consider both the circumstances of the parents and the circumstances of the child."  
In re Marriage of Lambdin
, 245 Ill. App. 3d 797, 806, 613 N.E.2d 1381, 1389 (1993).  The trial court erroneously concluded that respondent's financial circumstances were irrelevant.  "For a modification to occur, there must be a change in the child's needs, an increase in the father's income, or a change in the financial condition of the mother."  
In re Marriage of Pettifer
, 304 Ill. App. 3d 326, 328, 709 N.E.2d 994, 996 (1999).  The record contains no evidence of any of those changed circumstances. 

    Even if the evidence did show a substantial change in circumstances, we would nevertheless reverse the trial court's judgment because the trial court refused to consider the factors in section 513(b) and thereby caused substantial prejudice to respondent.  Section 513(b) provides:

"In making awards under paragraph *** (2) of subsection (a) [(which allows support for 18-year-olds who are still in high school)], *** the court shall consider all relevant factors that appear reasonable and necessary, including:

     (1) The financial resources of both parents.

(2) The standard of living the child would have enjoyed had the marriage not been dissolved.

(3) The financial resources of the child.

(4) The child's academic performance."  750 ILCS 5/513(b) (West 2000).

Like section 510 of the Dissolution Act, section 513 was directly applicable to this case, and the trial court erred in sidestepping both of those sections.  Section 510 was applicable because the trial court was modifying a support order.  Section 513 was applicable because the trial court was "award[ing] sums of money *** for the support of [a] child *** who [had] attained majority."  750 ILCS 5/513(a) (West 2000).  

We disagree with respondent that the trial court's failure to follow sections 510 and 513 deprived it of jurisdiction.  Subject-matter jurisdiction flowed from the Illinois Constitution, not from the Dissolution Act.  See 
Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.
, 199 Ill. 2d 325, 335, 770 N.E.2d 177, 185 (2002).  Nevertheless, the trial court disregarded controlling statutory law, to the substantial prejudice of respondent, and thereby abused its discretion.  See 
Leverton
, 314 Ill. App. 3d at 1083, 732 N.E.2d at 1096.  A court should not order a parent to pay a greater amount of support than the parent can reasonably afford.  
In re Support of Pearson
, 111 Ill. 2d 545, 552, 490 N.E.2d 1274, 1277 (1986).

III. CONCLUSION

For the foregoing reasons, we reverse the trial court's amended judgment order.  Respondent remains obligated, however, to pay the arrears in child support that accrued prior to September 10, 2001; we remand for entry of a judgment order stating the arrearage ($18,611.14) and statutory interest calculated consist­ent with 
Burwell v. Burwell
, 324 Ill. App. 3d 206, 753 N.E.2d 1259 (2001).

Reversed; cause remanded with directions.

KNECHT and McCULLOUGH, JJ., concur.