Nos. 2--04--1191 & 2--05--0088 cons.          filed: 10/2/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF THOMAS E. DAVID, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner and Counterrespondent-Appellant, | ) ) ) | |
| and | ) ) | No. 00--D--2702 |
| MARY A. DAVID, | ) ) ) | |
| Respondent and Counterpetitioner-Appellee. | ) ) ) | Honorable John W. Demling, Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

In these consolidated appeals, petitioner, Thomas E. David, seeks review of two amended qualified domestic relations orders (QDROs) entered by the circuit court of Du Page County. The QDROs awarded a share of Thomas's pension benefits to respondent, Mary A. David. We dismiss case No. 2--04--1191 for lack of jurisdiction. In case No. 2--05--0088, we conclude that the amended QDROs were properly entered and we therefore affirm the judgment of the trial court.

BACKGROUND

On February 18, 2003, the trial court entered a judgment dissolving the parties' marriage. Among the marital property divided under the judgment were various retirement funds, including Thomas's pensions with Commonwealth Edison Company (ComEd) and Exelon Corporation (Exelon). According to the judgment, the pensions were in "payout status." Thomas was evidently a

victim of downsizing and was not employed when the judgment was entered. Nonetheless, the trial court assigned 60% of the retirement funds to Mary, reasoning that, although Thomas had lost his job with ComEd/Exelon, he was likely to return to gainful employment, whereas Mary's earning potential was limited. Of relevance here, the judgment specifically provided, "The pension received by [Thomas] from Exelon (formerly Commonwealth Edison) shall be divided 60% to Mary *** and 40% to Thomas *** by a Qualified Domestic Relations Order." Prior to entry of the judgment, the trial court had issued a memorandum opinion in which it indicated that Mary's share of the pensions should amount to $17,816 per year.

On February 27, 2003, the trial court entered two separate QDROs: one pertaining to the ComEd pension (ComEd QDRO) and the other pertaining to the Exelon pension (Exelon QDRO). On September 18, 2003, however, Mary moved to modify the Exelon QDRO. She indicated that the administrator of the Exelon Corporation Employee Savings Plan (Exelon Plan) had determined that the Exelon QDRO did not conform to the applicable legal requirements. The trial court granted the motion. As amended on September 23, 2003, the Exelon QDRO provided in pertinent part:

> "[Mary] is awarded sixty percent (60%) of the vested portion of [Thomas's] account balance under the [Exelon] Plan determined as of February 18, 2003, as well as gains and losses subsequent to February 18, 2003 on that portion of [Thomas's] account balance awarded to [Mary]. The segregation of funds shall be on a pro rata basis by money type and by investment fund. The [Exelon] Plan shall pay [Mary's] benefit in the form of a lump sum as soon as administratively practicable following the later of the date [sic] on which this order is determined by the Plan Administrator to constitute a QDRO under the Internal Revenue Code and ERISA (Employee Retirement Income Security Act)."

Subsequently, on September 24, 2004, Mary also moved to amend the ComEd QDRO. She claimed that the administrator of the Commonwealth Edison Company Service Annuity System had determined that the original ComEd QDRO did not assign Mary any right to Thomas's early retirement benefits, supplemental benefits, and cost-of-living adjustments. Mary sought amendment of the QDRO to provide her with a share of these payments. Thomas objected to Mary's motion and also filed a motion to "amend and superceed [sic]" the original and amended Exelon QDROs. Thomas objected that neither QDRO conformed to the judgment of dissolution. With respect to the amended Exelon QDRO, Thomas complained that Mary was improperly awarded gains and losses accruing on her portion of the pension account after the dissolution of the marriage. Thomas insisted that Mary was entitled to the value of her portion of the pension only as of the date of dissolution.

On October 25, 2004, the trial court granted Mary's motion to amend the ComEd QDRO. As amended, the ComEd QDRO provided, in pertinent part:

"Benefits will be paid *** directly to [Mary], as follows:

a. [Mary] is hereby assigned the sum of Sixty Percent (60%) of [Thomas's] monthly benefit in the Pension Plan, including supplemental benefit and early retirement subsidy, said benefit to be determined on February 18, 2003. [Mary] is entitled to a pro-rata share of any cost-of-living adjustments made to [Thomas's] pension benefits."

On November 16, 2004, Thomas moved, pro se, to "conform" the amended ComEd QDRO to the judgment of dissolution. He argued that the amended ComEd QDRO improperly expanded Mary's rights under the original judgment. Prior to the disposition of this motion, Thomas's attorney filed a notice of appeal on November 24, 2004. That same day, Thomas filed a motion to reconsider the order amending the ComEd QDRO. On December 22, 2004, the trial court denied Thomas's

motion to amend and supercede the original and amended Exelon QDROs and also denied his motion to conform the amended ComEd QDRO to the judgment of dissolution. (Although the trial court's written order did not specifically mention Thomas's November 24, 2004, motion to reconsider, the trial court's remarks from the bench indicate that the court's ruling disposed of that motion.) On January 21, 2005, Thomas filed a second notice of appeal. This court consolidated the appeals.

## ANALYSIS

Initially, a question of appellate jurisdiction arises. Thomas filed separate notices of appeal on November 24, 2004, and January 21, 2005. When the former notice of appeal was filed, Thomas's motion to "conform" the October 25, 2004, amended ComEd QDRO to the judgment of dissolution was pending. Supreme Court Rule 303(a)(2) (155 Ill. 2d R. 303(a)(2)) provides, in pertinent part: "When a timely post-judgment motion has been filed by any party, *** a notice of appeal filed before the entry of the last pending post-judgment motion shall have no effect and shall be withdrawn by the party who filed it." Here, Thomas's motion was in the nature of a postjudgment motion, and it was not decided until December 22, 2004. As such, the November 24, 2004, notice of appeal was of no effect and should have been withdrawn. Consequently, the appeal arising from that notice of appeal (case No. 2--04--1191) must be dismissed for lack of jurisdiction. The second notice of appeal was timely, however. Accordingly, this court has jurisdiction in case No. 2--05--0088, and we will proceed to consider the merits of Thomas's appeal.

The Employee Retirement Income Security Act of 1974 (ERISA) generally restricts the alienation of certain retirement benefits. See 29 U.S.C. §1056(d)(1) (2000). However, under an important exception to this principle, in a divorce or dissolution of marriage proceeding, ERISA permits a state court to enter a QDRO assigning one spouse an interest (as marital property) in the

other spouse's retirement benefits. The QDRO must comply with specific requirements set forth in ERISA. See 29 U.S.C. §1056(d)(3) (2000). Thomas argues that the trial court lacked jurisdiction to enter the amended QDROs here, because they improperly deviated from the terms of the judgment of dissolution pertaining to the distribution of his pensions. In support of the basic premise of his argument--that the trial court lacked jurisdiction to enter a QDRO that did not conform to the judgment of dissolution--Thomas cites In re Marriage of Allen, 343 Ill. App. 3d 410 (2003). In Allen, the trial court entered a QDRO giving the wife a smaller fraction of the husband's pension than provided in the original dissolution judgment. The QDRO corrected a mathematical error in the original judgment, which had the effect of giving her credit for pension benefits that were not earned during the marriage. Nonetheless, the wife complained that the QDRO did not conform to the dissolution judgment, and she sought to amend the QDRO to distribute the pension in accordance with the formula in the judgment of dissolution. The Allen court affirmed the trial court's decision to amend the QDRO, rejecting the husband's argument that the trial court had acted outside its jurisdiction:

"[W]e believe the court has jurisdiction to amend a QDRO to conform it to the judgment. Although the trial court loses jurisdiction to amend a judgment after 30 days from entry, it retains indefinite jurisdiction to enforce the judgment. [Citation.] The judgment in this case specified a formula for use in determining the [wife's] share of the [husband's] pension. The original QDRO contained a different formula. The amendment to the QDRO changed the formula to conform to the judgment. This change did not impose new or different obligations on the parties. The rights and obligations of the parties vested when the judgment became final. [Citation.] The amendment to the QDRO was necessary to enforce the [wife's] rights and obligations with respect to the pension. Since the amended order only

enforced the provisions of the judgment, the court had jurisdiction to make the modifications." Allen, 343 Ill. App. 3d at 412-13.

Thus, consistent with Thomas's argument, the salient inquiry, in light of Allen, is whether the amended QDROs conform to the dissolution judgment or whether they impose new or different obligations. Thomas contends that the amended QDROs improperly deviated from the judgment of dissolution. He emphasizes that the judgment of dissolution awarded Mary "60 percent of Thomas['s] pension earned *** during [the] marriage," and "did not describe, discuss, or otherwise order that [Mary] be entitled to subsequent 'supplemental benefits,' or any 'early retirement subsidy,' or that she share in any 'cost-of-living adjustments made' to Thomas' [sic] pension benefits." Obviously, the argument presupposes that these items are not already subsumed within the definition of "pension" itself, in which case the trial court's failure to enumerate them in the judgment of dissolution would signify nothing. The question starkly presented, therefore, is what does "pension" mean, as used in the judgment? In answering this question, it is helpful to consider the amended ComEd QDRO and the amended Exelon QDRO separately. We consider the amended ComEd QDRO first.

Generally speaking, "judgments may be construed like other written instruments." In re Marriage of Breslow, 306 Ill. App. 3d 41, 57 (1999). "For instance, although an unambiguous judgment must be enforced as drafted, an ambiguous judgment may be read in conjunction with the entire record and construed in accordance therewith." Breslow, 306 Ill. App. 3d at 57. The term "pension" means "[r]etirement benefit paid regularly (normally, monthly), with the amount of such based generally on length of employment and amount of wages or salary of pensioner." Black's Law Dictionary 1134 (6th ed. 1990). As far as the record shows, the various items specified in the amended ComEd QDRO--early retirement benefits, supplemental benefits, and cost-of-living

adjustments--are simply part of the package of benefits that collectively make up Thomas's pension. We are aware that, within the labyrinthine provisions of ERISA and its associated regulations, more specialized definitions of "pension" do exist. Notably, in certain circumstances and for certain purposes, Department of Labor regulations treat cost-of-living adjustments as welfare plans rather than pension plans. See 29 C.F.R. §2510.3--2(g) (____). There is no reason to believe, however, that the trial court used the word other than according to its ordinary meaning.

In Coterel v. Coterel, No. 20899, slip op. at 1 (Ohio App. October 21, 2005), it was held that a divorce decree awarding the wife "one-half (½) of all benefits accumulated in [the husband's] pension" with General Motors Corporation entitled the wife to share in the husband's supplemental benefit for early retirement. The court rejected the husband's argument that the decree pertained only to his basic retirement benefit, not the supplemental benefit:

> "The decree orders 'all benefits' which [the husband] receives from the General Motors Pension Plan upon his retirement divided equally with [the wife]. No evidence was offered showing that the source of both benefits is anything other than the 'General Motors Pension Plan' to which the decree refers, or that the basis for the payments each involves is other than [the husband's] service as a General Motors employee." Coterel, slip op. at 1.

Despite the broader language in the divorce decree in Coterel, we believe the same reasoning applies here. All the benefits at issue in this case were earned through Thomas's service to ComEd prior to the dissolution of the marriage, and they are all provided for Thomas's financial support during his retirement. We thus believe the word "pension" in the judgment of dissolution here carries the same broad meaning as the phrase "all benefits" in Coterel.

Even to the extent that the meaning of "pension" in the judgment is in any way ambiguous, examination of the record as a whole tends to bolster our interpretation. Beyond the pensions, the

judgment of dissolution awarded Mary a 60% share of five other retirement accounts (two in her name and three in Thomas's). Given the identical treatment of both pension and non-pension retirement assets, it is difficult to conceive of any reason not to treat the items at issue here in the same fashion.

Thomas points to the trial court's statement in its memorandum opinion that Mary's share of the pensions would amount to $17,816 annually. According to Thomas, Mary will receive substantially more if the amended ComEd QDRO stands. The argument fails because, although Thomas argued in the trial court that Mary would receive about $10,000 more per year under the amended QDRO, he presented no evidence to substantiate the claim.

We next consider the amended Exelon QDRO. Thomas complains that this order improperly grants Mary benefits that accrued after the dissolution of marriage by awarding her postdissolution gains and losses on her portion of the balance of the pension account. We disagree. The amended Exelon QDRO did not award Mary the dollar value of her assigned share of the pension on the date of dissolution. Rather, the amended Exelon QDRO essentially divvied up the investments in Thomas's pension account on a pro rata basis pending the liquidation and lump sum distribution of Mary's share. This method of dividing the pension is consistent with the judgment of dissolution, which contains no requirement that the assets be liquidated on the date of the judgment. The postdissolution gains and losses are simply a by-product of dividing marital assets with a fluctuating value.

### SUPPLEMENTAL ISSUES ON REHEARING

Thomas filed a petition for rehearing claiming that we overlooked certain points in reaching our decision. Thomas initially contends that we failed to consider that the original judgment granted Mary 60 % of all of Thomas's ComEd pension, even though he had been working for ComEd for

over five years before the parties were married. Thus, Thomas maintains that the trial court improperly awarded Mary a portion of his nonmarital property.

In his original brief, Thomas noted that the original judgment awarded Mary a nonmarital portion of his pension; Thomas observed that the amended ComEd QDRO "in addition to granting Mary more money than the trial court ordered, does not take this into consideration." However, Thomas did not specifically ask this court to correct this alleged error. Rather, Thomas requested entry of an order "conforming to the unequivocal terms of the judgment of dissolution." The judgment of dissolution did <u>not</u> differentiate pension benefits earned during the marriage from those earned before the marriage. Therefore, under Thomas's own reasoning, the amended QDRO could not deviate from the judgment by exempting part of Thomas's pension. Indeed, the principal case cited by Thomas--<u>Allen</u>--held that the parties could not use a QDRO to correct a mistake in the original judgment regarding the portion of a pension that was marital property.

Thomas argues in his petition for rehearing that the trial court lacked jurisdiction to award Mary any part of the pension that constitutes nonmarital property. Thus, according to Thomas, the judgment is void in this respect. Thomas cites, <u>inter alia</u>, this court's decision in <u>In re Marriage of Roe</u>, 352 Ill. App. 3d 1155, 1161 (2004), which stated that because dissolution of marriage is entirely statutory in origin, "[c]ourts in dissolution cases may exercise their powers within the limits of the jurisdiction conferred by the statute, and this jurisdiction depends on the grant of the statute." <u>Roe</u>, 352 Ill. App. 3d at 1161. We are bound, however, by our supreme court's decision in <u>Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.</u>, 199 Ill. 2d 325 (2002), which unequivocally held that "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." <u>Belleville Toyota, Inc.</u>, 199 Ill. 2d at 334. Under <u>Belleville Toyota, Inc.</u>, a court in a

dissolution of marriage proceeding does not exceed its jurisdiction merely because it overlooks or misapplies the provisions of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 et seq. (West 2004)). Accord In re Marriage of Waller, 339 Ill. App. 3d 743, 751 (2003) (rejecting argument that trial court's failure to adhere to provisions of the Act governing educational expenses and modification of child support deprived the trial court of jurisdiction).

In re Marriage of Mitchell, 181 Ill. 2d 169 (1998), a case decided before Belleville Toyota, Inc., bolsters our conclusion. When Mitchell was decided, the Act required an order setting child support to state the support level in a dollar amount. The Mitchell court held that an order setting the level of support as a percentage of income, rather than as a fixed dollar amount, was erroneous but not void. The Mitchell court reasoned that where the trial court had jurisdiction over the parties, over the dissolution matter in general, and over the award of child support, an error in the trial court's judgment did not divest the trial court of jurisdiction. Mitchell, 181 Ill. 2d at 175. The Mitchell court based its conclusion, in part, on the traditional rule stated in In re Estate of Steinfeld, 158 Ill. 2d 1 (1994), that " '[a] void order or judgment is one entered by a court without jurisdiction of the subject matter or the parties, or by a court that lacks the inherent power to make or enter the order involved.' " Mitchell, 181 Ill. 2d at 177, quoting Steinfeld, 158 Ill. 2d at 12.

Roe cited Mitchell for the proposition that "[w]hen a trial court in a dissolution of marriage proceeding enters an order that it lacks the inherent power to make under the Marriage Act, its order is void." (Emphasis added.) Roe, 352 Ill. App. 3d at 1161. In doing so, Roe embellished Mitchell by adding the words "under the Marriage Act," which do not appear in the pertinent quotation from Mitchell. This embellishment is inconsistent with Belleville Toyota, Inc. and with our supreme court's decision in Steinbrecher v. Steinbrecher, 197 Ill. 2d 514 (2001), which explained that the "inherent power" requirement applies to administrative agencies and courts of limited jurisdiction,

not courts of general jurisdiction (i.e. the circuit court). Steinbrecher, 197 Ill. 2d at 529-30. Consonant with the reasoning of Mitchell, Steinbrecher, and Belleville Toyota, Inc., we hold that any error in awarding Mary part of the nonmarital portion of Thomas's pension was not jurisdictional. To the extent that Roe holds that the circuit court's subject matter jurisdiction in a dissolution of marriage proceeding is conferred by statute, Roe is overruled.

Thomas next reprises his argument that the amended ComEd QDRO deviated from the original judgment by awarding supplemental benefits to Mary. Thomas points to a pay stub among the trial exhibits included within the record on appeal. The pay stub indicates a pension payment of $2,474.55 designated "marital" and a payment of $1,235.01 designated "supplem." Thomas notes that the monthly amount of $2,474.55 multiplied by 12 equals $29,694.60 annually, and that 60% of this amount equals $17,816.76. Because the trial court found that 60% of Thomas's pension would amount to $17,816 per year, the implication is that the trial court did not intend to award a portion of the supplemental benefits.

In his original appellate brief, Thomas made no mention of this particular exhibit. He cited a pro se motion in which he had argued that the inclusion of supplemental benefits resulted in an award much larger than $17,816. However, he submitted no evidence in support of that pro se motion. In her appellee's brief, Mary specifically pointed out this shortcoming in Thomas's argument, so it should have come as no surprise to Thomas when we rejected it. The trial exhibit that Thomas presently cites in his petition for rehearing certainly could have been cited in his reply brief to rebut Mary's argument. Instead, responding to an observation in Mary's brief that the record on appeal did not include transcripts of the original trial testimony, Thomas took the position that the evidence presented at trial was not germane to the issue on appeal:

"[T]he issue on appeal does not have anything to do with what happened at trial. Indeed, the judgment itself is not being and in fact cannot be directly assailed now; what happened at trial leading to the judgment is of little practical import. The issue here is instead more precise: did the amended qualified domestic relations order (QDRO) entered match the terms of the judgment of dissolution? Respectfully, trial transcripts or bystander's reports are unnecessary to review this issue, under the de novo standard. [Citations.] It is a matter of viewing the judgment itself and the amended QDROs complained of."

If trial transcripts and bystander's reports are not necessary for review of the issue on appeal, it is difficult to understand how a trial exhibit could be. Now, however, Thomas would have us rely on a single trial exhibit, in a vacuum, to deduce how the trial court calculated the value of Mary's 60% share of the pension and what the trial court meant by "pension" as used in the judgment. But this shift in position breathes new life into Mary's concerns about the lack of a complete record. It is a basic principle of appellate review that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." Foutch, 99 Ill. 2d at 392. While, viewed in isolation, the trial exhibit may appear to shed light on the trial court's reasoning and its understanding of the word "pension," a full record of the trial testimony might very well place these matters in an altogether different light. Accordingly, we are unwilling to give controlling weight to this single exhibit.

CONCLUSION

For the foregoing reasons, we dismiss the appeal in case No. 2--04--1191 and affirm the judgment of the circuit court of Du Page County in case No. 2--05--0088.

No. 2--04--1191, Appeal dismissed.

Nos. 2--04--1191 & 2--05--0088 cons.

No. 2--05--0088, Affirmed.

CALLUM, J., concurs.

PRESIDING JUSTICE GROMETER, specially concurring:

I was on the panel that decided In re Marriage of Roe, 352 Ill. App. 3d 1155 (2004), and I sided with the majority in that decision. Despite my position in Roe, I concur today in the majority's supplemental decision to adhere to our original judgment in this case.

I write separately to note that the Roe decision did not include a discussion of either Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325 (2002), or Steinbrecher v. Steinbrecher, 197 Ill. 2d 514 (2001). As the majority points out, Belleville Toyota held that "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." Belleville Toyota, 199 Ill. 2d at 334. Steinbrecher held that the "inherent power" requirement applies to administrative agencies and courts of limited jurisdiction, not courts of general jurisdiction. Steinbrecher, 197 Ill. 2d at 529-30. Thus, our statement in Roe that a trial court order is void when the court in a dissolution proceeding enters an order that it lacks the inherent power to make under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 et seq. (West 2002)) is at odds with controlling supreme court precedent. Nevertheless, in closing, I point out that the members of our supreme court are seemingly divided about some of the issues we address today. See Belleville Toyota, 199 Ill. 2d at 370-71 (Freeman, J., dissenting, joined by McMorrow, J.) (classifying the majority's discussion of jurisdiction as "wrong"); Steinbrecher, 197 Ill. 2d at 547-49 (Freeman, J., dissenting, joined by McMorrow and

˘13˘

Kilbride, JJ.) (arguing that a void order is one entered by a court that lacks the inherent power to do so).