NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210528-U

NO. 4-21-0528

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 25, 2022
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| *In re* MARRIAGE OF DUSTY HAMPTON, <br> Petitioner, <br> and <br> BRADLEY HAMPTON, <br> Respondent-Appellee <br> (Illinois Department of Healthcare and Family <br> Services, Intervenor-Appellant). | ) Appeal from the <br> ) Circuit Court of <br> ) Greene County <br> ) No. 7D39 <br> ) <br> ) Honorable <br> ) Zachary A. Schmidt, <br> ) Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) A child support order entered by a court of competent jurisdiction cannot be attacked collaterally.

(2) The termination date in the child support order, though erroneous, was the result of judicial reasoning and determination and, thus, cannot be changed *nunc pro tunc*.

¶ 2    An order by the Greene County circuit court required respondent, Bradley Hampton, to pay child support to petitioner, Dusty Hampton. This child support order, however, contained a premature termination date, a date inconsistent with section 505(g) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(g) (West 2012)). Years after the entry of the order, the Illinois Department of Healthcare and Family Services (Department), as an intervenor, petitioned the court to correct the termination date. The court declined to do so. The Department appeals.

¶ 3    The circuit court rightly perceived its lack of authority to change the termination date in the child support order. Therefore, we affirm the judgment.

¶ 4                                    I. BACKGROUND

¶ 5    In June 2007, petitioner filed a petition to dissolve her marriage to respondent. They had three children: Gu. H., born November 17, 1999; Ga. H., born January 30, 2001; and A.H., born November 8, 2002. Petitioner sought custody of the children.

¶ 6    In May 2008, the circuit court dissolved the marriage, awarding custody of the children to petitioner and ordering respondent to pay child support.

¶ 7    In November 2010, respondent petitioned to reduce the amount of child support, alleging his income had decreased. For a variety of reasons, the hearing on the petition was repeatedly continued.

¶ 8    On August 15, 2012, the circuit court entered what the docket entry described as a "Default Uniform Order for Support," which ordered respondent to pay a new monthly amount of child support and to catch up on an arrearage. The order the court signed was a fill-in-the-blank form prepared by the Department. Under the heading of "Termination," the form had a blank space for the date when the child support obligation would end. The eighteenth birthday of the youngest child, A.H., was handwritten into the blank space:

> "This obligation to pay child support terminates on *11-8-20* unless modified by written order of the Court. (Insert a date no earlier than the date that the youngest child reaches the age of 18 or is expected to graduate from high school, whichever comes later.) This termination date does not apply to any arrearage that may remain unpaid on that date. The child(ren) covered by this order is/are: [Gu.H.], born 11/17/99, [Ga.H.], born 01/30/01 and [A.H.], born 11/08/02." (Emphasis added.)

¶ 9        In January 2021, the Department, as an intervenor, filed a "Petition to Continue Child Support." (Article X of the Illinois Public Aid Code (305 ILCS 5/10-1 *et seq.* (West 2018)) "empowers the Department to provide child support enforcement services on behalf of aid recipients and nonrecipients alike." *Department of Healthcare & Family Services ex rel. Nieto v. Arevalo*, 2016 IL App (2d) 150504, ¶ 29.) The Department requested the circuit court to order respondent "to pay current child support for [A.H.] in the amount ordered on August 15, 2012[,] until he/she graduates from high school or attains the age of 19, whichever is earlier." According to the Department's petition, "[t]he anticipated date for high school graduation [was] May 28, 2021." (In a hearing in September 2021, however, an assistant attorney general informed the circuit court that A.H. did not graduate from high school in May 2021 but that he might have graduated in the summer of 2021, while he was with respondent. The actual date of graduation is not in the record.)

¶ 10       Respondent opposed the Department's "Petition to Continue Child Support." He admitted that the "termination date in the order of August 15, 2012, was no doubt erroneous because as of August 15, 2012, Illinois law provided that the termination date of child support was when the youngest child turn[ed] 18 or graduate[d] from high school[,] whichever [was] later." See 750 ILCS 5/505(g) (West 2018). Nevertheless, respondent observed it was the Department that had drafted the order of August 15, 2012. Also, he asserted it was the Department that had requested the circuit court to enter the order with its incorrect termination date. He pointed out that the Department had never "[taken] any action to correct the termination date of the order" but, rather, had "allowed it to stand since that time." Therefore, respondent contended, the order of August 15, 2012, "[stood] as a valid order," immune to collateral attack. He reasoned that because the time had expired for challenging the terms of the order, the Department should be understood

- 3 -

as seeking, essentially, a modification of the order. Therefore, according to respondent, the Department had to follow section 510 (*id.* § 510) by alleging a change in circumstances. Or, alternatively, he argued, the Department had to allege the factors in section 513 (*id.* § 513) for an award of educational expenses. Because the Department had invoked neither of those statutory sections, let alone pleaded the requisites for relief under those sections, respondent requested the court to "[d]ismiss the Petition to Continue Child Support" and to "[r]ecognize that the [respondent's] child support obligation terminated November 8, 2020, as stated in the August 15, 2012[,] Order."

¶ 11　　　　In an order entered on March 12, 2021, the circuit court denied the Department's "Petition to Continue Child Support." On the authority of *In re Marriage of Waller*, 339 Ill. App. 3d 743 (2003), the court held that if a child had reached majority (as A.H. had), a court had to "turn to section 513" (750 ILCS 5/513 (West 2020) (titled "Educational Expenses for a Non-minor Child")) "when deciding whether to award support for that non-minor child." Extending respondent's child support obligation past the termination date of November 8, 2020, specified in the order of August 15, 2012, would be, in the circuit court's opinion, "a modification of child support contemplated by section 513." The court concluded, therefore, that, "absent further *** modification of child support under section 513," respondent's obligation to pay child support ended on November 8, 2020.

¶ 12　　　　On April 12, 2021, the Department moved that the circuit court reconsider its order of March 12, 2021. The Department's argument was twofold. First, the Department argued that in *Waller* the appellate court overlooked an amendment to section 505(d) (750 ILCS 5/505(g) (West 2020)) that went into effect on June 1, 2003, and that *Waller*, therefore, was erroneously decided. Second, the Department noted that in *Blisset v. Blisset*, 123 Ill. 2d 161, 167-68 (1988), the supreme

court held that "parents cannot be allowed to bargain away their child's interests in child support." The Department argued that ending respondent's child support obligation on the date of A.H.'s 18th birthday, while A.H. was still attending high school, "would be tantamount to allowing the parties to bargain away the child's right to receive support from both parents."

¶ 13        Respondent maintained that, for three reasons, the order of March 12, 2021, was correct. First, he claimed that the Department and petitioner had agreed to the order of August 15, 2012, and that, consequently, they were "precluded from complaining about the propriety or validity of it." Second, because the Department "never timely challenged" the order of August 15, 2012, it "[stood] as a valid court order"—notwithstanding any noncompliance with section 505(g) (750 ILCS 5/505(g) (West 2012)). Third, despite the amendment of section 505(g), respondent argued that *Waller*, 339 Ill. App. 3d at 748-49, was correct in its germane holding that "where the State seeks to continue child support past the date stated in the support order, it is seeking 'modification' that must be supported by a change of circumstances under Section 510(a)" (750 ILCS 5/510(a) (West 2000)).

¶ 14        On August 18, 2021, the circuit court denied the Department's motion for reconsideration.

¶ 15        On September 13, 2021, the Department filed its notice of appeal.

¶ 16                                II. ANALYSIS

¶ 17        The Department contends that by designating November 8, 2020, A.H.'s 18th birthday, as the date when respondent's obligation to pay child support would end, the order of August 15, 2012, violated section 505(g) of the Act (750 ILCS 5/505(g) (West 2012)). The third sentence of that section provided that "if the child [would] not graduate from high school until after attaining the age of 18, then the termination date [for child support should] be no earlier than

the earlier of the date on which the child's high school graduation [would] occur or the date on which the child [would] attain the age of 19." *Id.* When A.H. would turn 18 on November 8, 2020, he would still be in his senior year in high school. It was commonly known that high school graduation season was in May or June. See *Murdy v. Edgar*, 103 Ill. 2d 384, 394 (1984) (holding that "[c]ourts may take judicial notice of matters which are commonly known"). Thus, the Department argues, the circuit court violated section 505(g)—and the parenthetical instructions in the order—by ordering that child support would end before A.H.'s expected high school graduation date. See 750 ILCS 5/510(g) (West 2012).

¶ 18        Respondent counters that if indeed the circuit court erred by designating A.H.'s 18th birthday as the date when respondent's child support obligation would end, the time for raising that error was on August 15, 2012, not years later. Respondent cites *In re Marriage of Mitchell*, 181 Ill. 2d 169, 175 (1988), for the proposition that an error in a child support order entered by a court of competent jurisdiction does not make the order subject to collateral attack— that is, attack outside a direct appeal from the order.

¶ 19        In our *de novo* review, we agree with respondent's interpretation and application of *Mitchell*. See *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 429 (2009). It appears to be undisputed that the circuit court had jurisdiction in the hearing on August 15, 2012. This appeal is not a direct appeal from the child support order the court entered in that hearing. Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008) (providing that that a notice of appeal had to be filed within 30 days after entry of the final judgment). By now attacking the termination date in the child support order, the Department mounts a collateral attack upon the order, a collateral attack that *Mitchell* forbids. See *Mitchell*, 181 Ill. 2d at 175; see also *Malone v. Cosentino*, 99 Ill. 2d 29, 32-33 (1983) (explaining the collateral attack doctrine).

¶ 20    The Department maintains that, instead of collaterally attacking the child support order, it merely seeks a *nunc pro tunc* correction of the order. For two reasons, we disagree with the Department's characterization of its proposed remedy.

¶ 21    First, a *nunc pro tunc* correction "must be based on some note, memorandum[,] or memorial paper remaining in the file or upon the records of the court." *In re Marriage of Hirsch*, 135 Ill. App. 3d 945, 954 (1985). In other words, the record must contain a memorandum or other writing showing that on August 15, 2012, the circuit court intended some particular date other than November 8, 2020, to be written in the blank space for the termination date of child support. Not only does the record appear to lack such a memorandum, but, as the Department admits in its brief, not even the Department presently knows the date that should replace November 8, 2020. In a hearing on its "Petition to Continue Child Support," the Department informed the circuit court that A.H. was late graduating from high school and was attending summer school, after which he likely would graduate. This information is divulged in a footnote of the Department's brief. The footnote continues, "Because the exact date of graduation is not in the record, the Department requests a reversal of the circuit court's order and a remand with directions [that] it enter an order awarding child support through A.H.'s actual graduation date." The circuit court could not have intended to enter an actual graduation date that was not in the record *then* and that even *now* has yet to be ascertained. "[B]efore a *nunc pro tunc* entry may be made, it is necessary that there be evidence that a judgment was actually rendered." *Pestka v. Town of Fort Sheridan Co., L.L.C.*, 371 Ill. App. 3d 286, 295 (2007). The record lacks evidence of A.H.'s actual graduation date, let alone evidence of a judgment determining that actual graduation date.

¶ 22    Second, the termination date of child support is a matter of judicial reasoning and determination, not a clerical matter of form. A *nunc pro tunc* order "correct[s] clerical errors or

matters of form so that the record reflects the actual order or judgment rendered by the court."

*In re Marriage of Shelton*, 127 Ill. App. 3d 775, 782 (1984). The term "clerical error" is defined

by exclusion. "Clerical errors or matters of form are those errors, mistakes[,] or omissions which

are not the deliberate result of judicial reasoning and determination." *Id.* The termination date of

child support is the result of judicial reasoning and determination. A court engages in judicial

reasoning by applying section 505(g) to the facts of the case, and the court thereby determines a

date when the child support obligation shall end. For those two reasons, then, in our *de novo*

review, we find the *nunc pro tunc* doctrine to be inapplicable. See *In re Aaron R.*, 387 Ill. App. 3d

1130, 1139 (2009) (holding that an appellate court decides *de novo* "[w]hether an order satisfies

the legal criteria for a *nunc pro tunc* order").

¶ 23    The Department argues that injustice would result from refusing a *nunc pro tunc*

correction in circumstances such as these. This perceived potential for injustice begins with the

statutory requirement that "[a]n order for support shall include a date on which the current support

obligation terminates." 750 ILCS 5/505(g) (West 2020). If the circuit court incorrectly predicted

the date of high school graduation—say, the child ended up not graduating with his classmates and

had to attend summer school—the child would be unfairly and arbitrarily deprived of support that

the legislature intended him to receive. Only if the court accurately forecasted the date of high

school graduation would the child receive all the support that section 505(g) contemplated.

Otherwise, the child would be out of luck. By the same token, the parent paying child support

arguably would be subjected to injustice if the child graduated from high school earlier than the

court had predicted.

¶ 24    Such injustices could be avoided, however, by petitioning for a modification of the

child support order. The circuit court has "continuing" jurisdiction "to modify provisions of a

judgment respecting support." *In re Marriage of Homan*, 126 Ill. App. 3d 133, 135 (1984). A modification of the termination date in a child support order would be a modification of the child support order. See *Waller*, 339 Ill. App. 3d at 749. Section 510(a)(1) of the Act (750 ILCS 5/510(a)(1) (West 2012)) "requires a 'showing of substantial change in circumstances' to justify a modification of a child support order." *In re Marriage of Liss*, 268 Ill. App. 3d 919, 923 (1994) (quoting 750 ILCS 5/510(a) (West 1992)). "A substantial change in circumstances typically means that the child's needs, the obligor parent's ability to pay, or both have changed since the entry of the most recent support order." (Internal quotation marks omitted.) *In re Marriage of Yabush*, 2021 IL App (1st) 201136, ¶ 31. A child's needs can change with a change in the child's expected date of high school graduation. Typically, if the circuit court projects a high school graduation date, it would be known, before that date arrives, whether the child will graduate on that date or whether the child will graduate earlier or later. Usually, a party would have an opportunity to file a petition to modify the termination date in the child support order. See 750 ILCS 5/510(a) (West 2020) (providing that, generally, "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification"). We note that the Department disclaims any intent to seek a modification pursuant to section 510 of the Act (*id.* § 510).

¶ 25                                  III. CONCLUSION

¶ 26          In sum, the child support order of August 15, 2012, is immune to collateral attack, and the termination date therein cannot be changed *nunc pro tunc*. Therefore, we affirm the circuit court's judgment.

¶ 27          Affirmed.