# ILLINOIS OFFICIAL REPORTS

## Supreme Court

***In re Marriage of Coulter*, 2012 IL 113474**

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF ROBERT LEE COULTER, Appellee, and AMY ELEANOR TRINIDAD, Appellant. |
| Docket No. | 113474 |
| Filed | September 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An ex-husband's request to preliminarily enjoin his ex-wife from moving to California with their three minor children was properly denied where she had met all the terms of a joint parenting agreement permitting her to do so and that agreement was part of the dissolution judgment; but where he had also sought custody modification based on changed circumstances and his petition remained pending, he should have the opportunity to meet his statutory burden of proof in that regard. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Bennett J. Braun, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on Appeal

Norman Ruber and Eric J. Schwab, of Berger Schatz, of Chicago, for appellant.

Stephen R. Botti and Michelle E. Dahlquist, of Botti Marinaccio, Ltd., of Oak Brook, for appellee.

Justices

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    The parties are the divorced parents of three minor children. After the mother, Amy Trinidad, informed the father, Robert Lee Coulter (Lee), of her intention to move to California with the children as permitted by their joint parenting agreement, he sought a preliminary injunction barring her from removing the children from Illinois. Amy thereafter filed a petition for temporary removal. After a hearing, the circuit court of Will County denied the injunction. The appellate court reversed and remanded. 2011 IL App (3d) 110424-U. This court allowed Amy's petition for leave to appeal pursuant to Supreme Court Rule 315 (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)). For the reasons that follow, we reverse the judgment of the appellate court.

¶ 2                              BACKGROUND

¶ 3    The parties were divorced on May 8, 2008. They had previously entered into a joint parenting agreement (JPA), which the circuit court incorporated into the judgment of dissolution. The parties agreed to joint custody, with Amy exercising primary residential custody. The JPA expressly contemplated that Amy and the children would move to California. Lee agreed to the removal, provided that certain conditions were met. Specifically, the removal provision of the JPA stated:

> "Each party agrees that so long as Lee is a resident of Illinois the children shall not be removed from the State of Illinois for a period of twenty-four (24) months subsequent to the entry of a Judgement herein. The parties further agree that in the event the Mother wishes to remove the children to the State of California, more particularly, Southern California or Orange County, she shall provide the Father with her notice of intent to do so. As stated hereinabove, no removal shall take place in the first twenty-four (24) months[;] however, during the next twelve (12) months, the parties agree to mediate and/or discuss a removal to Southern California and if the parties reach an agreement then the removal shall be allowed.

-2-

If the parties do not reach an agreement between the twenty-fourth and thirty-sixth month after the entry of a Judgement herein then the Mother will be free to remove the children and herself to Southern California without any contest from the Father as to a removal. In the event the parties do not work out an agreement between the twenty-fourth and thirty-sixth month the mother is then allowed to remove the children, the Father shall still have the right to have the Court determine the parenting schedule even though he has no further right to contest the issue of removal.

The provisions with respect to removal set forth hereinabove pertain only to the Mother's desire and/or intent to remove the children to Southern California. [If] [t]he Mother desires to remove the children to an out of state location other than Southern California then these provisions shall not apply and the Mother shall be subject to the statutory provisions of Section 609 of the [Illinois Marriage and Dissolution of Marriage Act]."

¶ 4 On May 3, 2010, five days short of the second anniversary of the entry of the judgment of dissolution, Amy's attorney gave Lee's attorney written notice of her intent to relocate to California in accordance with the terms of the JPA. The letter specifically requested that Lee's attorney respond to the notice. Lee neither responded, either directly or through his attorney, nor initiated mediation or discussion with Amy regarding the planned removal.

¶ 5 On March 3, 2011, two months before the expiration of the 12-month period for discussion or mediation, Lee filed an emergency petition seeking to enjoin Amy from removing the children to California. He alleged that Amy had not requested mediation. In addition, he alleged that the removal provision in the JPA contained "insufficient evidence to support a finding that removal is in the children's best interest" and that a substantial change in circumstances had occurred such that he should be given sole custody of the children.

¶ 6 Amy responded by filing a petition for temporary removal on May 4, 2011. In her petition, she noted that the removal was expressly allowed by the JPA.

¶ 7 On June 13, 2011, the circuit court denied Lee's petition for an injunction. Although the court did not specifically state that it was allowing Amy's petition for temporary removal, it did state that it would be necessary to modify the visitation schedule because the children would be moving to California.

¶ 8 Amy filed a petition for permanent removal on July 20, 2011.

¶ 9 Lee took an interlocutory appeal. The appellate court found that the circuit court abused its discretion by denying the preliminary injunction. The order noted the existence of the JPA, but did not mention that the JPA had been incorporated into the judgment of dissolution or consider whether that judgment should be given effect. Rather, the appellate court stated that granting a preliminary injunction would "preserve the status quo" and would "do no more than prohibit respondent from an act which she is already lawfully prevented from doing." The court concluded that Lee had sufficiently demonstrated the four elements required for preliminary injunctive relief and remanded the matter to the circuit court.

¶ 10 On remand, the circuit court ordered Amy to return the children to Illinois pursuant

to the mandate of the appellate court. This court entered a stay of that order and allowed Amy's petition for leave to appeal.

¶ 11                                     ANALYSIS

¶ 12        Section 609(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) provides:

> "(a) The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." 750 ILCS 5/609(a) (West 2010).

¶ 13        The sole issue considered by the appellate court was whether, in light of this provision, the circuit court abused its discretion when it denied Lee's request for a preliminary injunction to bar Amy from removing their children from Illinois. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62-63 (2006) (stating that a decision to grant or deny a preliminary injunction is reviewed for abuse of discretion).

¶ 14        Amy argues that the appellate court was incorrect when it said that she was "already lawfully prevented" from removing the children from Illinois. She claims that the JPA, by virtue of its incorporation into the judgment of dissolution, was a valid and enforceable court order granting leave to remove.

¶ 15        We agree with Amy that we must first determine whether the judgment order that incorporated the JPA containing the removal provision constitutes the leave of court required by section 609.

¶ 16        Section 609(a) specifically allows the circuit court to grant leave for removal at the time it enters the judgment of dissolution. In addition, section 502 governs the incorporation of an agreement of the parties into the judgment of dissolution:

> "(a) To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children.
>
> (b) The terms of the agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable.
>
> (c) If the court finds the agreement unconscionable, it may request the parties to submit a revised agreement or upon hearing, may make orders for the disposition of property, maintenance, child support and other matters.
>
> (d) Unless the agreement provides to the contrary, its terms shall be set forth in the judgment, and the parties shall be ordered to perform under such terms, or if the

-4-

agreement provides that its terms shall not be set forth in the judgment, the judgment shall identify the agreement and state that the court has approved its terms.

(e) Terms of the agreement set forth in the judgment are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms.

(f) Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." 750 ILCS 5/502 (West 2010).

¶ 17 Under this provision, a JPA that is set forth in the judgment or is incorporated by reference is enforceable as both an order of the court and as a contract. A JPA that is not expressly incorporated in the judgment, but is merely identified and approved, must be enforced as a contract. (We note that this ability to treat the JPA as contract alone allows parties to agree to a term that the court would not have authority to order, for example, an agreement that the parents will pay for a child's postgraduate education.)

¶ 18 Thus, the precise question in this case is whether the parties' JPA contained language that, when incorporated into the judgment of dissolution, granted Amy leave to remove the children to California two years after entry of the judgment.

¶ 19 A JPA, like a marital settlement agreement (MSA), is a contract between the parties and, as such, a court's primary objective is to give effect to the intent of the parties, which must be determined only by the language of the agreement, absent an ambiguity. See *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). Therefore, the interpretation of a JPA is a question of law, which we review *de novo*. See *id*.

¶ 20 Under the JPA, Amy is permitted to remove the children to California, but only to California, if she complies with two requirements. First, she may not remove the children until 24 months have elapsed from the entry of judgment. Second, she must give Lee notice of her intent to do so. Amy fully complied with these requirements.

¶ 21 Once notice is given, there are several alternative courses of action. First, either party may request mediation or discussion regarding the planned removal. If either party does so, the other party agrees to participate. This provision suggests that the parties appreciated that it would be necessary to work out the details of visitation if and when Amy exercised her right of removal. However, neither party requested mediation or discussion. Second, if the parties reach an agreement, "removal shall be allowed." In this case, no agreement was reached. Third, absent an agreement, Amy is free to remove the children to California and Lee waives the right to contest removal.

¶ 22 By incorporating the JPA into the judgment of dissolution, the court accepted the parties' plan for dealing with the removal question and made it an enforceable order of the court. 750 ILCS 5/502(e) (West 2010). Therefore, because Amy complied with the notice requirement and did not refuse to participate in discussions and/or mediation requested by Lee, she was free to remove the children to California. She was not required to file a petition for modification of custody under section 610 of the Act (750 ILCS 5/610 (West 2010)) and her

motion for removal under section 609 was unnecessary, because she already had leave to remove the children.

¶ 23    Lee argues that despite the JPA, which expressly contemplates removal, no court has yet made a determination as to whether removal would be in the best interests of the children. He asserts that this question must be resolved by the court before Amy can be allowed to take the children to California.

¶ 24    We disagree. The JPA that the parties presented to the circuit court at the time of their divorce evinces their agreement that removal would be in the best interests of the children, so long as they remained in Illinois for at least two years following their parents' divorce. At the very least, the JPA evinces Lee's agreement that the planned move would not be against their best interests.

¶ 25    Although the court may, and indeed should, question the terms that the parents have agreed to if there is any reason to believe that the terms would adversely affect the children, the right of fit parents to decide what is in their children's best interests is of constitutional magnitude. See *Troxel v. Granville*, 530 U.S. 57, 69 (2000) (plurality op.) (referring to the traditional presumption that a fit parent will act in the best interests of his or her child); *Wickham v. Byrne*, 199 Ill. 2d 309, 320 (2002) (citing *Troxel* for the traditional presumption). This presumption is not weakened by the fact that the parents are divorcing. Their considered opinion regarding the best interests of their children, as reflected by their agreements regarding custody, visitation, and removal, is entitled to great deference by the court. In addition, nothing in the removal statute prevents the parties from agreeing to removal at some time after the entry of judgment or the court from issuing such an order.

¶ 26    Lee's reliance on *In re Marriage of Boehmer*, 371 Ill. App. 3d 1154 (2007), is misplaced. In that case, the parties' JPA was incorporated into the judgment of dissolution. Thereafter, the parties entered into a separate written agreement purporting to allow the mother to remove their children to Louisiana and setting out a new visitation plan. That agreement was not presented to the court as an agreed order. The father then filed an emergency petition to enjoin removal and to modify custody. The court held that the written agreement was insufficient evidence to support a finding that removal was in the child's best interests. *Id.* at 1160.

¶ 27    *Boehmer* is distinguishable from the present case because the court in that case had not previously entered an order allowing removal. When the father filed his emergency petition, the court was asked for the first time to make a determination as to the best interests of the children. In addition, by that time, the father had repudiated the parties' side agreement so there was no agreement binding them to a mutual assessment of best interests.

¶ 28    In the present case, the parties agreed to removal under certain conditions and presented their agreement to the court as a signed JPA, for incorporation into the judgment. The question of best interests of the children was resolved by the parties and their resolution was given proper deference by the court.

¶ 29    This is in keeping with the strong public policy of Illinois to encourage parties to resolve as many issues as possible by agreement before resorting to litigation. See *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 518 (2003) (noting strong public policy favoring peaceful

settlement of claims); *In re Guardianship of Babb*, 162 Ill. 2d 153, 162 (1994); *Rakowski v. Lucente*, 104 Ill. 2d 317, 325 (1984).

¶ 30    The Act itself demonstrates that this policy is at least as strong, if not stronger, in the context of disputes between divorcing parents as it is in other contexts. The Act specifically states that among its purposes are to: "promote the amicable settlement of disputes that have arisen between parties to a marriage"; "mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage"; and "secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children during and after the litigation." 750 ILCS 5/102(3), (4), (7) (West 2010).

¶ 31    We also note that when divorcing spouses present a signed MSA or JPA to the court, the document reflects a negotiated agreement. Each party has agreed to certain terms in exchange for other terms, or terms may be related to each other. For example, if divorcing parents agree that one parent is to have primary residential custody, they may also agree that he or she will retain possession of the marital home. If the court were to alter the custody arrangement in such a case, it would affect the parties' agreement as to the division of property.

¶ 32    In the present case, Lee agreed to removal, which Amy was clearly already anticipating, and she agreed to postpone her plans for two years. We cannot know what trade-offs they made to reach this agreement. Perhaps Amy agreed to joint custody in return for Lee's agreement to removal in two years. Perhaps both parties agreed that the children would require time to adjust to their parents' divorce. What we do know is that the parties reached an agreement and that they had their own reasons for agreeing to the removal provision. To set aside that agreement now, merely because one party has had a change of heart, would be to undermine the effectiveness of section 502 of the Act as an expression of public policy.

¶ 33    In sum, the parties' JPA was incorporated into the judgment of dissolution and was thereafter enforceable as an order of the court. The agreement expressly granted Amy leave to remove the children provided that she complied with certain requirements. She fully complied. Lee's express waiver of any objection to removal should have been enforced by the circuit court and, thus, the court properly denied his petition for a temporary restraining order.

¶ 34    It was unnecessary for the appellate court to consider the elements that must be shown by a party seeking a preliminary injunction because Lee, having expressly waived the right to contest removal, lacked the right to have the court determine that issue.

¶ 35    However, Lee was not entirely without recourse. If circumstances had changed so significantly since the judgment was entered that a modification of custody would be appropriate, he was free to seek modification of custody pursuant to section 610 of the Act. Under this section, he has the burden of proving by:

> "clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred

-7-

in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child." 750 ILCS 5/610(b) (West 2010).

¶ 36    His petition to modify custody remains pending in the circuit court where he will have the opportunity to meet his burden.

¶ 37                                    CONCLUSION

¶ 38    We hold that Lee's petition for a preliminary injunction was properly denied by the trial court based on Amy's compliance with the conditions of the JPA and on his agreement not to contest removal. The judgment of the appellate court is therefore reversed and the judgment of the circuit court is affirmed.

¶ 39    Appellate court judgment reversed.

¶ 40    Circuit court judgment affirmed.