# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Razzano*, 2012 IL App (3d) 110608

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF BRENDA LYNN RAZZANO, n/k/a Brenda Lynn Gorski, Petitioner-Appellee, and DANA LOUIS RAZZANO, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0608 |
| Filed | November 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The parties' handwritten note on their marital settlement agreement redefining "child support" to include post-secondary-education expenses excluded section 513 of the Illinois Marriage and Dissolution of Marriage Act from consideration in determining the amount respondent was required to pay, and the trial court properly used section 505(a) of the Act in modifying respondent's payment for such expenses, rather than section 513(a)(2). |
| Decision Under Review | Appeal from the Circuit Court of Iroquois County, No. 90-D-97; the Hon. Kenneth Leshen, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | George P. Cuonzo, of Razzano Law Offices, of Watseka, for appellant. |
| | |
| | Christopher Bohlen, of Barmann, Bohlen, Jacobi & Cieslik, P.C., of Kankakee, for appellee. |
| | |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion. |
| | Justice Lytton concurred in the judgment and opinion. |
| | Justice McDade concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1     The petitioner, Brenda Lynn Razzano, now known as Brenda Lynn Gorski, filed a motion to modify child support, alleging changes in circumstances in the income of her ex-husband, Dana Louis Razzano, and in the needs of the parties' two children, Maria and Joseph. Brenda also filed, in the alternative, a petition for educational support. The circuit court granted Brenda's motion to modify child support, and Dana appealed. On appeal, Dana argues that the court erred when it modified child support pursuant to section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a) (West 2004)), rather than under section 513(a)(2) of the Act (750 ILCS 5/513(a)(2) (West 2004)). We affirm.

¶ 2                                    FACTS
¶ 3     Brenda and Dana married in February 1983. They had two children during the marriage, Maria, born in 1986, and Joseph, born in 1989. In 1992, the parties divorced. A separation agreement (the Agreement) entered into by the parties was incorporated by the circuit court into the judgment of dissolution of marriage. In the Agreement, the parties agreed that Brenda would have custody of the children. They also agreed that Dana would pay Brenda $600 per month in child support, and that "[Dana's] obligation for the support and maintenance of each child shall continue until the child attains full emancipation as defined in this Agreement." In relevant part, the Agreement defined emancipation as including "the child's reaching age twenty-two (22), so long as the child is attending college full-time, or completing college, or terminating full-time attendance at college, whichever shall first occur."

¶ 4     The Agreement also contained two provisions on education expenses for the children: (1) "[Brenda] shall assume responsibility for the expenses of education of the minor children, including day care and private school expenses"; and (2) "[t]he parties have made no agreement regarding the expenses of education beyond primary education." However, the parties crossed out the second provision and replaced it with a handwritten provision initialed

-2-

by the parties that read: "[t]he parties have agreed that the support provision below is in lieu of any other obligation by [Dana] for education support."

¶ 5　　On September 12, 2005, Brenda filed a motion to modify child support, in which she alleged that two changes in circumstances had occurred: (1) Dana's income had substantially increased; and (2) the costs of raising the children had increased. Brenda also filed, in the alternative, a petition for educational support, in which she requested a contribution from Dana for Maria's post-secondary-education expenses.

¶ 6　　After lengthy procedural delays, Brenda filed supporting memoranda in 2010. In one memorandum, Brenda argued that the language of the Agreement defining support intended to cover post-secondary-education expenses as well, and requested a modification order requiring Dana to pay for support accrued during Joseph's minority as well as post-secondary-education expenses for both children. Alternatively, she argued in a second memorandum that Dana should be ordered to pay a portion of the children's education expenses pursuant to section 513(a)(2) of the Act (750 ILCS 5/513(a)(2) (West 2004)).

¶ 7　　At the hearing on the motions, neither of the parties appeared. Initially, the attorneys discussed and reached stipulations on the exact amounts of income and expenses that were relevant to the circuit court's decision, including what Dana would owe if the court determined that the child support guidelines in section 505 of the Act were applicable. Next, the attorneys presented their arguments on the issue of postminority expenses. In his primary argument, Brenda's attorney argued that the court should use the child support provision from section 505 of the Act to calculate Dana's contribution, as the support provision in the Agreement treated expenses incurred up to the children reaching age 22–including education expenses–as being a part of what was covered by child support. He stated:

"So the support provision is, assuming that's controlling, and I have to candidly say that I think if [the now-deceased attorney who represented Brenda during the divorce proceedings] were here, alive and be able to talk–talk about this as me and use the best of our memories, we'd tell you that that had nothing to do with post-high school education. But we are–the language is sufficient to cover it and my client is willing to accept it on that basis because of the ease that it allows the calculation to be done and regardless of what's been spent by either party."

¶ 8　　Dana's attorney argued that it did not matter whether the circuit court considered the postminority expenses to be child support or education expenses. Dana's attorney reasoned that because section 505 of the Act provides that child support obligations end when the child attains the age of majority, the education-expense provision in section 513 of the Act would have to be used to determine Dana's contribution.

¶ 9　　After taking the matter under advisement, the circuit court issued a ruling in which it stated:

"The Court finds and holds that the plain meaning of the Agreement is that the parties intended [Dana's] payment obligation to be construed as an obligation to pay child support up to the occurrence of an emancipating event as defined in the Agreement. [Dana's] obligation shall be interpreted in that light. The Court further holds that [Dana's] child support obligation is modifiable and that the same shall be accomplished

through the application of [the section 505] statutory guidelines."

Accordingly, the court entered judgment in favor of Brenda and ordered Dana to pay a modified amount of child support pursuant to section 505, rather than section 513.

¶ 10    Dana appealed after the circuit court denied his motion to reconsider.

¶ 11                                          ANALYSIS

¶ 12    On appeal, Dana argues that the circuit court erred when it modified child support pursuant to section 505(a) of the Act, which provides that child support payments will generally be based on a percentage of the paying parent's income unless the court determined that a deviation was appropriate (750 ILCS 5/505(a) (West 2004)). Specifically, Dana contends that because section 505(a)'s guidelines apply to child support obligations only when the children are under age 18 or under age 19 if they are still in high school (750 ILCS 5/505(a) (West 2004)), the court should have used section 513 when it modified his child support obligation, as section 513 specifically applies to education expenses accruing after a child reaches the age of majority (750 ILCS 5/513 (West 2004)).

¶ 13    Generally, with regard to whether the circuit court's decision to modify child support was erroneous, we review that decision for an abuse of discretion. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135 (2004). At issue in this case, however, is the interpretation and effect of the parties' Agreement, which was incorporated into the dissolution judgment, as it relates to whether section 505 or section 513 controls. As noted by our supreme court in *In re Marriage of Coulter*, 2012 IL 113474, ¶ 19, "[a] [joint parenting agreement], like a marital settlement agreement ***, is a contract between the parties and, as such, a court's primary objective is to give effect to the intent of the parties, which must be determined only by the language of the agreement, absent an ambiguity." This issue presents a question of law that we review *de novo*. *Id.*

¶ 14    In relevant part, section 502(a) of the Act states that "[t]o promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral agreement containing provisions for disposition of *** support *** of their children." 750 ILCS 5/502(a) (West 2004). The terms of such agreements "are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms." 750 ILCS 5/502(e) (West 2004). Further, the terms of such agreements that relate to child support may be modified. 750 ILCS 5/502(f) (West 2004) ("[e]xcept for terms concerning the support *** of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides"); 750 ILCS 5/510 (West 2004) (providing circumstances under which child support can be modified). Our supreme court has recently discussed the significance of these types of agreements in *Marriage of Coulter*, 2012 IL 113474.

¶ 15    In *Marriage of Coulter*, the parties entered into a joint parenting agreement, which was incorporated into the judgment of dissolution. *Id.* ¶ 3. In that agreement, the parties agreed that the mother could remove the children to California if certain conditions were met. *Id.* Just short of two years after the dissolution judgment, when the mother informed the father of her intention to remove the children to California, the father attempted to block the

removal via injunction. *Id.* ¶¶ 4-5. The circuit court denied the father's petition for an injunction, and the father appealed. *Id.* ¶¶ 5, 7. In an unpublished opinion, this court acknowledged that the joint parenting agreement existed; however, this court still reversed, finding that the father met the requirements for an injunction. *Id.* ¶ 9.

¶ 16    On appeal, our supreme court held that this court erred by failing to give effect to the parties' joint parenting agreement. *Id.* ¶ 38. Because the joint parenting agreement had been incorporated into the dissolution judgment, it became an enforceable order of the court.[1] *Id.* ¶ 33. Our supreme court emphasized that "when divorcing spouses present a signed [marital settlement agreement] or [joint parenting agreement] to the court, the document reflects a negotiated agreement. Each party has agreed to certain terms in exchange for other terms, or terms may be related to each other." *Id.* ¶ 31. If a court altered one of the terms of such an agreement, the entire agreement would be impacted. *Id.* ¶ 31. While the circuit court can reject terms in agreements involving children (750 ILCS 5/502(b) (West 2004); *In re Marriage of McNeil*, 367 Ill. App. 3d 676, 685 (2006); see *Marriage of Coulter*, 2012 IL 113474, ¶¶ 25, 28), our supreme court also stated that the reasons the parties in that case agreed to the removal provision were their own and setting aside that agreement would frustrate the public policy considerations behind section 502 of the Act (*id.* ¶ 32). Accordingly, our supreme court reversed this court and affirmed the circuit court's denial of the father's petition for injunction. *Id.* ¶ 38.

¶ 17    In the Agreement in this case, the parties agreed that Dana would pay child support until the children were emancipated, as that term was defined in the Agreement itself. Their negotiated definition of emancipation included, in relevant part, "the child's reaching age twenty-two (22), so long as the child is attending college full-time, or completing college, or terminating full-time attendance at college, whichever shall first occur." As section 510(d) of the Act indicates, the parties were free to negotiate this definition of emancipation and agree that Dana would pay child support beyond the children reaching the age of majority. 750 ILCS 5/510(d) (West 2004) (recognizing the right of parties to agree to extend child support payments beyond the traditional cutoff point of age 18 or age 19 if the child is still in high school).

¶ 18    The parties also reached agreements on education and related expenses. They agreed that "[Brenda] shall assume responsibility for the expenses of education of the minor children, including day care and private school expenses." In addition, they initially included a statement that "[t]he parties have made no agreement regarding the expenses of education beyond primary education." However, they crossed out that provision and replaced it with a handwritten provision: "[t]he parties have agreed that the support provision below is in lieu of any other obligation by [Dana] for education support." The handwritten provision was initialed by both parties. In doing so, the parties evinced the intent to satisfy all education expense obligations and considerations in the context of Dana's *child support* payment,

---

[1] We also note that our supreme court stated that under section 502, an agreement "that is set forth in the judgment or is incorporated by reference is enforceable as both an order of the court and as a contract." *Id.* ¶ 17.

thereby excluding section 513 from consideration. See, *e.g.*, *In re Marriage of Houston*, 150 Ill. App. 3d 608, 614 (1986) (in a marital settlement agreement, the parties agreed on an amount for child support and also required that the father pay the child's college expenses; by doing so, the parties contracted section 513 considerations out of the determination of the amount the father was required to pay); *Larsen v. Larsen*, 126 Ill. App. 3d 1072, 1073 (1984) (the parties contracted out of section 513(a)'s requirement of considering the mother's ability to pay because the marital settlement agreement required the father to pay for all of the child's expenses); *In re Marriage of Holderrieth*, 181 Ill. App. 3d 199, 206 (1989) (holding that the parties contracted out of section 513 in their settlement agreement by requiring the father to pay the children's college expenses and that such agreements will be upheld unless clear and convincing evidence is presented to show that the agreement resulted from coercion, fraud, or duress; or is contrary to public policy or morals; or is unconscionable); see also 2 H. Joseph Gitlin, *Gitlin on Divorce: A Guide to Illinois Matrimonial Law* § 20-10 (3d ed. 2012); accord *In re Marriage of Petersen*, 2011 IL 110984, ¶ 18 (ordering the circuit court to recalculate the father's obligation for education expenses pursuant to section 513, as the marital settlement agreement *reserved* the issue of education expense contribution, rather than setting concrete obligations to pay); *In re Marriage of Spircoff*, 2011 IL App (1st) 103189, ¶ 20 (when parties agree to pay for the college expenses of their children in a marital settlement agreement but do not include a specific amount, courts will still honor the agreement and will determine parental contributions later); *In re Marriage of Koenig*, 2012 IL App (2d) 110503, ¶ 17 (same).

¶ 19    Even though Brenda's attorney stated at the modification hearing that to the best of his memory, he believed the Agreement had nothing to do with post-secondary-education expenses, that belief does not change the impact of the unambiguous statement in the Agreement itself. The record in this case reflects no attempt by either party to reform the language of the Agreement to indicate the parties did not intend to cover postsecondary education; in fact, the modification of the Agreement via handwritten note indicates just the opposite. Rather than reserve the issue for future determination, the parties agreed to redefine "child support" to include post-secondary-education expenses. As the Agreement was incorporated into the judgment of dissolution, it was an enforceable order of the court. *Marriage of Coulter*, 2012 IL 113474, ¶ 22. Under the circumstances of this case, we hold that the circuit court did not err when it used the guidelines in section 505(a) to modify Dana's child support obligation, rather than section 513(a)(2). See *Anderson v. Heckman*, 343 Ill. App. 3d 449, 452-53 (2003); *In re Marriage of Hightower*, 358 Ill. App. 3d 165, 171-72 (2005).

¶ 20                                            CONCLUSION
¶ 21    The judgment of the circuit court of Iroquois County is affirmed.


¶ 22    Affirmed.


¶ 23    JUSTICE McDADE, concurring in part and dissenting in part.

¶ 24 The majority has affirmed the decision of the circuit court of Iroquois County modifying, pursuant to section 505 of the Illinois Marriage and Dissolution of Marriage Act, the child support agreed upon by the parties in their separation agreement and incorporated into the judgment of dissolution of marriage in 1992. For the reasons that follow, I concur in part and respectfully dissent in part from that decision.

¶ 25 I agree with the majority that the trial court had the *power* to modify the child support as it did and I agree that doing so with regard to Maria's increased medical expenses was appropriate. The reason for my dissent is that it seems clear from the briefs in our court and the arguments in the trial court that Brenda's primary goal was to impose a *new* obligation on Dana to share in the expenses of the children's college education. Starting from that premise, the language in the separation agreement is critical to my dissent.

¶ 26 In a separate article VI, entitled "Education of Children and Related Expenses," there were two original provisions:

"1. The Wife shall assume responsibility for the expenses of education of the minor children, including day care and private school.

2. The parties have made no agreement regarding the expenses of education beyond primary education."

As can be seen, it was initially made clear that Brenda would be responsible for the day care and private school education of the minor children and that the parties had made no agreement regarding educational expenses beyond primary school. Those provisions also make it clear that any obligation for Dana to contribute to the children's education expenses is separate and distinct from his general child support obligation, which appears in a different Article.

¶ 27 However, the second provision in the education section was modified by handwritten strikeouts and additions to read:

"2. The parties have agreed that the support provision below is in lieu of any other obligation of the defendant for education support."

I read this provision as saying that as long as Dana pays the support as required in the agreement, he has no obligation to pay for education expenses. I believe this is consistent with the plain meaning of the phrase, "in lieu of."[2]

¶ 28 Apparently Brenda perceived its meaning this way as well, as is shown by two facts: first, her motion to modify child support was accompanied by a separate petition for educational support, and, second, she made a judicial admission that the modified provision excluded post-secondary-education expenses.

¶ 29 For these reasons, I cannot agree with the majority's conclusion that in making the handwritten modification "the parties evinced the intent to satisfy all education expense obligations and considerations in the context of Dana's *child support* payment, thereby excluding section 513 from consideration." (Emphasis in original.) See *supra* ¶ 18. I believe

---

[2]Black's Law Dictionary 787 (6th ed.1990), defines "in lieu of" as "[i]nstead of; in place of; in substitution of. It does not mean 'in addition to.' [Citation.]"

the plain language of the modified provision *denies* the existence of any obligation for Dana to pay education expenses.

¶ 30     The cases cited by the majority, *In re Marriage of Houston*, 150 Ill. App. 3d 608 (1986); *Larsen v. Larsen*, 126 Ill. App. 3d 1072 (1984), and *In re Marriage of Holderrieth*, 181 Ill. App. 3d 199 (1989), are distinguishable because, in each, the husband had previously agreed to pay education expenses. In the instant case, Dana had not. He had only agreed to pay *child support* until each child reached age 22, "so long as the child is attending college full-time, or completing college, or terminating full-time attendance at college, whichever shall first occur." As expressly stated in the Agreement, this was the definition of an "emancipation event." There is no indication that it is a statement of a requirement that Dana share in the payment of educational expenses.

¶ 31     I believe my interpretation draws additional support from the fact that when the parties divorced in 1992, Maria was six years old and Joseph was three years old. At that time Dana's child support payment was $600 per month. It never increased (nor was it apparently intended to increase) to reflect the higher costs associated with high school attendance or the extremely high costs of college. There is no evidence in the record that Dana ever paid any education expenses or that he was obligated to do so.

¶ 32     All of the foregoing circumstances bring this case more into line with the supreme court's ultimate decision in *In re Marriage of Petersen*, 2011 IL 110984, ¶ 18, in which the court found that the father's obligation for education expenses had to be calculated using section 513 because the marital settlement agreement did not establish a concrete obligation to pay but instead reserved the issue for later determination. In this case, the separation agreement, as incorporated in the judgment for dissolution of marriage, did not *reserve* the issue but it actually *excluded* any obligation for Dana to pay anything other than simple child support. In the instant case, as in *Petersen*, an effort to impose a new obligation for educational expenses or support for nonminor children must be accomplished by way of section 513.

¶ 33     A trial court has the authority to modify a child support provision in a dissolution judgment that was entered in accordance with a settlement agreement. *In re Marriage of Anderson*, 405 Ill. App. 3d 1129 (2010). Educational expenses are a form of support, and thus, a trial court may also *modify* an award of educational expenses. *In re Marriage of Petersen*, 2011 IL 110984. Where, however, no prior obligation to pay educational expenses has been agreed upon by the parties and ordered by the court, a modification must be made under section 513, not section 505. *In re Marriage of Petersen*, 2011 IL 110984. A trial court's determination to modify a party's support obligation is reviewed for an abuse of discretion. *In re Marriage of Waller*, 339 Ill. App. 3d 743 (2003).

¶ 34     The balance of my analysis in this dissent will focus solely on whether the propriety and amount of any obligation that may be imposed on Dana to pay educational expenses for his non-minor children should be determined under section 505 or section 513 of the Act. Pursuant to section 505 of the Act, in a proceeding to modify a *previously entered* child support order, a trial "court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support." 750 ILCS 5/505(a) (West 2004). "For purposes of [section 505], the term 'child' shall include any child

under age 18 and any child under age 19 who is still attending high school." 750 ILCS 5/505(a) (West 2004). The section 505 guidelines further provide that child support shall be set at 20% of the supporting party's net income for one child, and at 28% for two children. 750 ILCS 5/505(a)(1) (West 2004).

¶ 35    However, where, as here, the petitioning party seeks to impose a new obligation pertaining to nonminor children or for educational expenses on the other party, section 505 is superceded by section 513, which expressly governs "Support for Non-minor Children and Educational Expenses." 750 ILCS 5/513 (West 2004). Pursuant to this section, the trial "court may award sums of money out of the property and income of either or both parties *** , as equity may require, for the support of the child or children of the parties who have attained majority" in certain instances. 750 ILCS 5/513(a) (West 2004). These instances include a "provision for the educational expenses of the child or children of the parties, whether of minor or majority age." 750 ILCS 5/513(a)(2) (West 2004); see *In re Marriage of Hillebrand*, 258 Ill. App. 3d 835 (1994).

¶ 36    In fashioning an award under section 513 of the Act, the trial court "shall consider all relevant factors that appear reasonable and necessary, including: (1) The financial resources of both parents[;] (2) The standard of living the child would have enjoyed had the marriage not been dissolved[;] (3) The financial resources of the child[; and] (4) The child's academic performance." 750 ILCS 5/513(b) (West 2004).

¶ 37    Thus, "if [a] child has attained majority, the trial court must turn to section 513 when deciding whether to award support for that 'non-minor child.' " *Waller*, 339 Ill. App. 3d at 748. In *Waller*, the custodial parent sought to extend a child support order, which was set to expire when the minor at issue turned 18 years old, for an additional nine months after the child turned 18. There, the court acknowledged that a trial court may award postmajority support, but its determination of the propriety and amount of support must be based on section 513 of the Act, and not section 505. *Waller*, 339 Ill. App. 3d 743. Correspondingly, the *Waller* court also concluded that the trial court abused its discretion by refusing to consider section 513 of the Act when it modified the parent's support payments for a nonminor. *Waller*, 339 Ill. App. 3d 743.

¶ 38    Although *Waller* involved the issue of extending the duration of a child support order due to expire when the child reached majority, unlike the situation in the instant case, it also applies to the decision to require Dana to pay educational expenses for both his minor and nonminor children because it is a new obligation.

¶ 39    By its own terms, section 505 of the Act applies only to children under the age of 18, or under the age of 19 and still in high school. Likewise, by its own terms, section 513 of the Act applies to the payment of educational expenses for children whether they are minors or have attained the age of majority. Consequently, the court should have turned to section 513 of the Act to calculate any responsibility Dana might have for educational expenses. The court abused its discretion by using section 505 of the Act for that purpose.

¶ 40    In summary, I agree with the majority that the trial court had the authority–because the parties had defined the emancipation event in their separation agreement beyond the time their children reached majority–to modify the existing child support order to cover Maria's

increased medical expenses. Nor was it inappropriate to do so.

¶ 41    However, I believe the totality of the circumstances in this case compels the conclusion that Dana had no previously existing obligation to pay educational expenses for his children, the trial court abused its discretion in not determining and calculating such an obligation pursuant to section 513 of the act. I, therefore, dissent from the decision that a newly created responsibility for educational expenses could be achieved by a simple modification of the judgment of dissolution of marriage pursuant to section 505.