**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220375-U

Order filed August 30, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* THE MATTER OF: | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| BILLY MYERS, | ) | Will County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-22-0375 |
| v. | ) | Circuit No. 2018 F 266 |
| | ) | |
| JOCELIN ROBLEDO, | ) | Honorable |
| | ) | Raymond Nash, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Hettel and Albrecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court's modification of the agreed parenting plan was against the manifest weight of the evidence because there was no demonstration that sending the minor child to a private school was in her best interests.

¶ 2     Respondent Jocelin Robledo appeals the trial court's order granting petitioner Billy Myers's motion to modify the minor child's school designation and religious training set forth in the parties' parenting agreement. For the reasons that follow, we reverse.

¶ 3                                    I. BACKGROUND

¶ 4    The parties were never married. Their daughter, A.M., was born in 2012. In May 2018, the trial court entered an admission of paternity and judgment of paternity finding Billy to be the father. At the same time, it entered an agreed parenting plan. Under the parenting plan, the parties had joint significant decision-making responsibilities regarding the minor child's education, health, religion, and extracurricular activities. The plan specified Billy's parenting time and designated Jocelin as the child's custodian. The plan also specified "the residential address of the child for school enrollment purposes only shall be mother's address 419 Cowles Ave."[1] The court modified Billy's parenting time in April 2019.

¶ 5    Billy filed a motion on June 27, 2022, alleging the parties could not agree where to send A.M. to school for the fifth grade. A hearing was held on August 19. Billy was willing to pay all the costs for A.M. to attend St. Jude Catholic School in Joliet, and A.M. had received a scholarship. Jocelin wanted A.M. to attend a public school, Pershing Elementary School, in Joliet. A.M. had always attended public school, A.M. was not baptized, and she did not receive the Catholic sacraments. The court did not find the arguments on either side sufficient to make a decision but believed the child's best interests would be served by getting her into the best quality school. The court instructed the parties to provide more information so that it could compare the two schools.

¶ 6    The parties returned to court on August 25. Billy presented a brief letter from the principal of St. Jude containing school statistics and an admission packet. For the 2020-2021 school year, 144 students were enrolled with an average class size of 16 students. Students participate in morning and afternoon prayers. Billy testified he listens to religious podcasts with A.M. and students do not need to be Catholic to attend St. Jude. The "Illinois State School Report Card" for

_____

[1]Both parties had moved since the entry of the parenting plan, and this was no longer Jocelin's address at the time of the August 19 hearing.

Pershing did not report much data due to Covid-19, but it indicated the average class size is 23 students, chronic absenteeism is 24.7%, and teacher retention is 91.1%.

¶ 7 Jocelin argued Billy's motion sought modification to the parenting plan, which provides A.M. is to attend schools associated with the mother's address. Jocelin also argued it sought to modify the parenting plan regarding religion. She did not want A.M. to receive religious training in the Catholic faith. Billy argued his motion did not ask to modify the judgment, because the judgment required all decisions regarding A.M. to be made jointly, and the residential address for school enrollment could still be Jocelin's address even if A.M. attends St. Jude.

¶ 8 The court noted it did not have much experience with either school, but the records provided by the parties demonstrates St. Jude provides the better opportunity. "In terms of what the qualitative difference between the two schools is I don't think it's close with all due respect, and I think the much superior opportunity would be with St. Jude." The court also stated, "I don't think there is a problem with exposing on both ends a child to their tradition or preferred tradition or a tradition of worship that they want the child exposed to on their own time." Moreover, "I don't think this is a modification. This is a classic situation where the parents legitimately on a serious issue merely can't agree as to the joint custody and joint decision making and they needed to resort to the court sadly because I think, I really do think this should have been decided by the parents." The court ordered Billy to enroll A.M. in St. Jude. Jocelin appealed.

¶ 9 II. ANALYSIS

¶ 10 Two issues are raised on appeal: (1) whether ordering A.M.'s enrollment in St. Jude constituted a modification of the agreed parenting plan, and (2) whether granting the motion, ordering A.M.'s enrollment in St. Jude, was against the manifest weight of the evidence.

¶ 11 A. Modification

3

¶ 12    The court did not find its order to be a modification of the parenting plan. Jocelin argues that the court's August 25 order modified the parenting plan. Prior to the court's order, she argues, A.M.'s religious training was very limited, so to require her to attend a faith-based school with prayer sessions and religious training is contrary to the status quo and therefore constitutes a modification. Billy argues the order was not a modification because the parenting plan was silent on the issue of where A.M. was to attend school, and once Jocelin unilaterally moved, the registration address listed in the plan was no longer valid. Further, the order did not modify the parenting plan regarding religion because both parents had control over A.M.'s religious upbringing and both exposed her to different branches of Christianity.

¶ 13    "A joint parenting agreement, like a marital settlement agreement, is a contract between the parties and, as such, a court's primary objective is to give effect to the intent of the parties, which must be determined only by the language of the agreement, absent an ambiguity." *In re Marriage of Coulter*, 2012 IL 113474, ¶ 19. An interpretation of a parenting agreement is a question of law that we review *de novo*. *Id.*

¶ 14    We struggle to see how the court's August 25 order could be anything other than a modification of the parenting plan. The parenting plan provided Jocelin and Billy would share significant decision-making on A.M.'s education, which includes choice of schools, and provided that A.M.'s residential address for school enrollment purposes only shall be mother's address. The parenting plan did not specify whether A.M. was to attend public or private school. The August 25 order, however, not only specified A.M.'s school, but also required Billy to pay any and all costs associated with enrollment and attendance at St. Jude. The court's order therefore modified the parenting plan.

¶ 15                    B. Manifest Weight of the Evidence

4

¶ 16    Jocelin argues there was insufficient evidence proffered at the time of the hearing to support a finding that a modification of the child's school and religious training was necessary to serve the child's best interests as set forth by section 610.5(c) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/610.5(c) (West 2020)). There was little data available to compare the two schools other than class size, and Billy's argument was based on his desire for A.M. to attend St. Jude. Billy argues even though the court did not apply the modification procedure enumerated in section 610.5(c), sufficient evidence exists in the record to affirm its ruling. He maintains a substantial change in circumstances occurred when Jocelin unilaterally moved A.M. from the registration address in the parenting plan and enrolled her in a new school associated with the new address. Further, he argues the trial court correctly held that attending St. Jude was in A.M.'s best interest.

¶ 17    "When the trial court finds that no substantial change in circumstances has occurred, we review whether the manifest weight of the evidence supports the finding." *In re Marriage of Wengielnik*, 2020 IL App (3d) 180533, ¶ 12. "Findings are against the manifest weight of the evidence if they are unreasonable, arbitrary, or not based on the evidence or if the opposite conclusion is clearly evident." *In re Parentage of W.J.B.*, 2016 IL App (2d) 140361, ¶ 30

¶ 18    According to the Illinois Parentage Act of 2015 (Parentage Act), "the court has continuing jurisdiction to modify an order for *** allocation of parental responsibilities *** included in a judgment entered under this Act." 750 ILCS 46/808 (West 2020). "Any allocation of parental responsibilities, parenting time, or relocation judgment modification shall be in accordance with the relevant factors specified in the [Marriage Act]." *Id.*

¶ 19    According to section 610.5(c) of the Marriage Act,

> "the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." 750 ILCS 5/610.5(c) (West 2020).

"Thus, the court has the authority to modify a parenting plan or allocation judgment pursuant to section 610.5(c) of the [Marriage] Act if (1) a substantial change has occurred since the existing parenting plan or allocation judgment was entered and (2) the modification is necessary to serve the child's best interests." *In re Marriage of Burns*, 2019 IL App (2d) 180715, ¶ 26.

¶ 20        However, section 610.5(e) of the Marriage Act permits modification without a showing of changed circumstances if the modification is in the child's best interest and any one of the following conditions is proven:

> "(1) the modification reflects the actual arrangement under which the child has been receiving care, without parental objection, for the 6 months preceding the filing of the petition for modification, provided that the arrangement is not the result of a parent's acquiescence resulting from circumstances that negated the parent's ability to give meaningful consent;

> (2) the modification constitutes a minor modification in the parenting plan or allocation judgment;

> (3) the modification is necessary to modify an agreed parenting plan or allocation judgment that the court would not have ordered or approved under

6

Section 602.5 or 602.7 had the court been aware of the circumstances at the time of the order or approval; or

(4) the parties agree to the modification." 750 ILCS 5/610.5(e) (West 2020).

¶ 21    Here, Billy never attempted to show, and the trial court made no findings that a substantial change had occurred. Nor did any of the four conditions set forth in section 610.5(e) apply. Instead, the court determined Billy was not seeking a modification and focused solely on the child's best interests. This plainly violated section 610.5 of the Marriage Act as adopted by the Parentage Act.

¶ 22    Further, we agree with Jocelin that the court lacked enough information to adequately compare the two schools and determine whether A.M.'s attendance at one over the other served her best interests. See *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 38 ("Courts have previously found school quality to be a relevant factor in determining a child's best interests."). The only data the court could use as a meaningful comparison between the two schools was the class size. Much of the public school's most recent data was unavailable due to Covid-19. Moreover, there was no showing that A.M.'s best interests were not being served in the public school system. Nor was there a showing that she was struggling academically, socially, or required extracurricular activities that were unavailable at the public school. Simply put, there was no indication that a modification in the parenting plan was required or that A.M.'s needs were not being met; there was only a showing that Billy sought a modification based on desire. The court's finding that enrolling A.M. in St. Jude was in her best interests was against the manifest weight of the evidence.

¶ 23    III. CONCLUSION

¶ 24    The judgment of the circuit court of Will County is reversed.

¶ 25    Reversed.

7